**FLOWERS INDUSTRIES, INC., a Delaware corporation and its wholly owned subsidiaries Atlanta Baking Company, Inc., Flowers Baking Company of South Carolina, Inc., and Schott's Bakery, Inc., Plaintiffs,**

v.

**BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, Defendant.**

Civ. A. No. C 82–1365 A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 18, 1983.

W. Rhett Tanner, James H. Landon, Michael J. Templeton, Hansell & Post, Atlanta, Ga., for plaintiffs.

Kenneth F. Hickey, Margery S. Friedman, Morgan, Lewis & Bockius, Washington, D.C., Robert D. Feagin, Gambrell & Russell, Atlanta, Ga., for defendant.

## ORDER

·VINING, District Judge.

This is an action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, in which the plaintiff seeks declaratory and injunctive·relief, challenging the constitutionality of the withdrawal liability provisions of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.* (Supp. 1982) under the Fifth and Seventh Amendments to the United States Constitution. The defendant has moved to dismiss the complaint for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer the action to the District of Maryland pursuant to 28 U.S.C. § 1404(a). Following a hearing on this motion in September 1982, this court deferred a ruling until all parties could participate in discovery specifically limited to the issue of proper venue. Discovery on that issue has been completed, and the matter is now before the court for determination.

Plaintiff Flowers Industries is a corporation engaged in the production and marketing of bakery goods and is incorporated in the state of Delaware, with its principal · place of business in Thomasville, Georgia. From 1978 through 1980, three wholly owned subsidiaries of the plaintiff (located in Houston, Texas, Spartanburg, South Carolina, and Atlanta, Georgia) entered into collective bargaining agreements with local unions of the Bakery, Confectionery and Tobacco Workers International Union of America for a term of two years. Each agreement contained express provisions for the company's payment of certain prescribed sums to the Bakery and Confectionery Union and Industry International Pension Fund (the Fund). There were no specific provisions contained in the collective bargaining agreements with respect to payment for withdrawal liability, if any. During the existence of these collective bargaining agreements, the plaintiff's subsidiaries paid approximately $2,000,000 in contributions to the Fund.

In July 1980 and January 1981, employees at the Atlanta, Georgia, and Spartanburg,

South Carolina, subsidiaries elected to replace the Fund with another pension plan. The Fund, through its administrative director, wrote the plaintiff on April 16, 1981, demanding $1,268,494 payment for withdrawal liability under the MPPAA for the plaintiff's withdrawals. Although the plaintiff is contesting the withdrawal liability determination of the Fund, it has made payments to the Fund in the amount of $849,528.

The Fund urges this court to dismiss the complaint on the ground that venue is improperly laid in the Northern District of Georgia, contending (1) that Title 4, Section 4301(d) of the MPPAA, 29 U.S.C. § 1451(d), is the sole and exclusive venue provision for actions brought pursuant to the MPPAA, and that the defendant is not a resident of Georgia for purposes of 29 U.S.C. § 1451(d), and (2) that the general venue statutes, 28 U.S.C. §§ 1391(b) and (c) are not applicable and do not provide for venue in the Northern District of Georgia. Finally, the defendant submits that even if this court decides that venue is proper in the Northern District of Georgia, the case should be transferred to the District of Maryland for the convenience of parties and witnesses, pursuant to 28 U.S.C. § 1404(a).

The plaintiff contends (1) that since this action is a constitutional challenge to the provisions of the MPPAA, the appropriate venue statute is 28 U.S.C. § 1391(b), the provision for federal question jurisdiction, as opposed to the special venue statute contained in the MPPAA, (2) that venue under 28 U.S.C. § 1391(b) is proper since the claim in the instant case arose in the Northern District of Georgia, and (3) that even if 29 U.S.C. § 1451(d) is the appropriate venue statute, the defendant is a resident of this district. Finally, the plaintiff submits that this court should not transfer this case to the District of Maryland under 28 U.S.C. § 1404(a).

The Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, as amended by the MPPAA, 29 U.S.C. § 1381 *et seq.* (Supp.1982), is divided into different sections, some of which contain specific provisions for venue. Section 502(e)(2) of Title 1, 29 U.S.C. § 1132(e)(2), applies to actions founded upon breaches of fiduciary duty, and provides that venue is proper where the plan is administered, where the breach occurred, or where a defendant resides or may be found.[1] Section 4301(d) of Title 4, 29 U.S.C. § 1451(d), on the other hand is more restrictive, providing:

> An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

The defendant contends, and this court agrees, that 29 U.S.C. § 1451(d) is the exclusive provision governing venue in actions brought pursuant to Title 4 of ERISA. *See Boyer v. J.A. Majors Company Employees' Profit Sharing Plan,* 481 F.Supp. 454 (N.D. Ga.1979) (decided under the special venue provision in Title 1 of ERISA, 29 U.S.C. § 1132(e)(2)). The plaintiff submits, however, that since the instant case involves a constitutional challenge to the provisions of ERISA and is brought pursuant to the Declaratory Judgment Act, 29 U.S.C. § 1451(d) is not the exclusive venue provision. This court agrees.

A constitutional challenge such as that involved in this case is not the type foreseen by Congress when it enacted the MPPAA venue provisions, since those provisions comprehend statutorily defined actions arising under ERISA and MPPAA. The constitutional challenge to MPPAA, both on its face and as applied to the plaintiff herein, and arising under the Fifth and Seventh Amendments to the Constitution, and a right of action brought pursuant to the

---

1. One case cited by both parties, *Varsic v. United States District Court for the Central District of California,* 607 F.2d 245 (9th Cir.1979), which held that a pension fund may be found in a district where an employee does his work, was predicated on this venue provision, not the provision at issue in this case. Although this court reaches the same result as the Ninth Circuit, this court specifically notes that *Varsic* is not controlling authority in this case.

Declaratory Judgment Act, are neither defined nor delimited by the express MPPAA enforcement provisions of 29 U.S.C. § 1451(d). *Boyer v. J.A. Majors Company, supra,* is distinguishable since it was not a constitutional challenge but involved an action to recover benefits allegedly due under an employer profit sharing account, an action particularly within the provinces of ERISA and MPPAA.

■ The defendant analogizes the special venue provisions of ERISA and the MPPAA and the inapplicability of the general venue statutes to actions involving patent infringement, which also contain specific venue provisions. Section 1391(c) of Title 28 has been held inapplicable to actions brought pursuant to 28 U.S.C. § 1400(b), which contains a specific venue provision. *See Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). However, actions for a declaratory judgment that a patent is invalid or noninfringed, suits to enjoin infringement, and suits against the Commissioner of Patents are excluded from the venue provisions of 28 U.S.C. § 1400(b) and are governed by the general venue statutes contained in Title 28. Similarly, the specific venue provision contained in ERISA, 29 U.S.C. § 1451(d), does not encompass actions for a declaratory judgment that a provision of the Act is unconstitutional.

Since this is not an action brought pursuant to ERISA or MPPAA, the specific venue provision contained in 29 U.S.C. § 1451(d) is not the exclusive venue statute applicable in this action. It may be supplemented by the general venue statute governing federal question jurisdiction, 28 U.S.C. § 1391(b). That statute provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

The legislative history of section 1391(b) fails to suggest what the draftsman thought about the question of where a claim arose. *See* 1 Moore's Federal Practice, ¶ 0.142[5.1–2], at 1423, when the statute was amended to extend venue to a district "in which the claim arose," although the purpose was to "facilitate the disposition of … claims by providing … a more convenient forum to the litigants and witnesses involved." H.R.Rep. No. 893, 89th Cong.2d Sess. 2 (1966). The Fifth Circuit in *Florida Nursing Home Association v. Page,* 616 F.2d 1355 (5th Cir.1980), held that "where the claim arose" should be ascertained by advertence to events having operative significance in the case and by a common sense appraisal of the implications of those events for accessibility to witnesses and records. The court further suggested that it was possible for several forums to satisfy the statutory standard with respect to a given claim, stating that a court should not oppose the plaintiff's choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one for balancing the equities and fairness to each party.

Although this is a liberal standard, the court agrees with the defendant that the single operative event giving rise to this cause of action was the Fund's decision to impose withdrawal liability on the plaintiff, a decision assessed and administered in the District of Maryland. The plaintiff contends that the decision of its employees to replace the Fund with another pension plan played an operative and integral part in the background for the constitutional challenge here. While that decision played a part in the Fund's decision to impose withdrawal liability, the crucial factor providing the basis for this lawsuit was the administrative decision, made in Maryland, to impose withdrawal liability. Accordingly, venue is not proper in the Northern District of Georgia under the "claim arose" provision of 28 U.S.C. § 1391(b).

Venue under 28 U.S.C. § 1391(b) is also proper, however, in a judicial district where a defendant resides. Although not defined in section 1391(b), "residence" for venue purposes is defined in 28 U.S.C. § 1391(c),

the provision applicable to corporations.[2] That statute provides:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

The parties do not dispute that the Fund's sole office is located in Maryland, that all employees and representatives of the Fund are located at the Maryland office, that most of the documents and records are located in Maryland, and that all decisions concerning the management and administration of the Fund are made by John J. Fleming, administrative director of the Fund, or other Fund representatives in Maryland. It is also clear that the defendant is neither incorporated nor licensed to do business in Georgia as required by 28 U.S.C. § 1391(c), and it is further apparent that the Fund is not administered in the Northern District of Georgia as required by 29 U.S.C. § 1451(d). At issue is whether the defendant is "doing business" in the Northern District of Georgia as required both by 28 U.S.C. § 1391(c) and 29 U.S.C. § 1451(d). The parties appear to agree that the "doing business" phrase contained in section 1391(c) also determines whether the defendant is doing business within the meaning of 29 U.S.C. § 1451(d). Therefore, if this court determines that the defendant is doing business for purposes of 28 U.S.C. § 1391(c), it would also determine that the defendant is doing business for purposes of 29 U.S.C. § 1451(d).

▬▬ Whether a corporation is present and "doing business" within the forum district so as to subject it to suit therein is essentially a question of fact which must be decided under federal law. *Frazier v. Alabama Motor Club, Inc.,* 349 F.2d 456 (5th Cir.1965). There is no exact formula under which the question can be decided. To reach the proper answer, consideration must be given to such relevant factors as the general character of the corporation, the nature and scope of its business operations, the extent of the authorized corporate activities conducted on its behalf within the forum district, the continuity of those activities, and its contacts within the district. A corporation is present within the forum district when its activities there have not only been continuous and systematic but also give rise to the liability sued on, even though no consent to be sued or authorization of an agent to accept service of process has been given. *Frazier v. Alabama Motor Club, Inc., supra.*

In construing the "doing business" provision of section 1391(c), the plaintiff urges this court to accept and extend the view espoused by Judge Evans in *Cable News Network, Inc. v. American Broadcasting Companies, Inc.,* 528 F.Supp. 365 (N.D.Ga. 1981), holding that if a defendant corporation is doing business within a judicial district sufficient under procedural due process considerations to subject it to service of process, then the district is a proper venue. *See also* 1 Moore's Federal Practice, ¶ 0.142[5.1–3], C. Wright & A. Miller Federal Practice and Procedure, ¶ 3811, pp. 68–70. Simply stated, the plaintiff would have this court hold that "doing business" for purposes of the federal venue statute need only meet the minimum contacts test applicable to the "transacting any business" provision contained in the Georgia Long Arm Statute, O.C.G.A. § 9–10–91(1).

It is settled that federal law governs the issue of doing business for venue purposes under 28 U.S.C. § 1391(c) and that state long arm statutes are not, of themselves, determinative. *Frazier v. Alabama Motor Club, Inc., supra.* Although one judge in this district has held that the standards for transacting business for purposes of *in personam* jurisdiction and the standards for doing business for venue purposes are the

---

**2.** An unincorporated association such as the defendant in this case is a "corporation" for purposes of this statute and resides for venue purposes in whatever judicial district it is doing business. *Denver & Rio Grande Western R.R. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir.1980).

same, this judge expressly declines to accept that view.[3]

This court is convinced that the concept of "doing business" incorporated in the venue statute is narrower than the concept of "transacting business" as contained in the Georgia Long Arm Statute. Furthermore, the quantum of activity carried on in the district must be more than that required to meet the constitutional due process standards for personal jurisdiction set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1954). The underlying purpose of long arm statutes is to protect plaintiffs by allowing local suits against foreign defendants who have availed themselves of the privilege of doing some act or consummating some transaction with or in the forum. The venue statutes, on the other hand, are designed to protect defendants from inconvenience with regard to the forum where the case may be tried and to place the trial in a place having a logical connection with the parties to the litigation. Merely because the court has the power to exercise *in personam* jurisdiction over a defendant because that defendant has certain minimum contacts in that forum does not imply that that district would be a proper venue when the concepts of fairness and convenience to the defendant are considered.

There is no exact formula for determining whether a defendant is doing business within the forum district so as to determine this issue of venue. However, consideration must be given to the following factors: (1) the character and nature of the business, (2) the continuity of the business operations in the district[4] (is it of a systematic nature so as to constitute a pattern of business activity, or is it merely composed of a single transaction or a single visit with the state), (3) the number of contacts with the district (*e.g.,* the court will examine such contacts as meetings, telephone calls, mailings, solicitations, and negotiations; however, all of these types of contacts require a quantum of activity greater than a single telephone call or a single meeting), (4) the physical presence of the defendant in the forum (does the defendant maintain an office or other facility in the district, maintain a bank account, telephone listing, post office box, or own any property or other assets in the district), and (5) the method of doing business (is it by way of direct representative, agent, subsidiary, franchise, or other affiliate, or is the defendant a common carrier).

The factors listed are, of course, merely guidelines rather than a strict test, since determination of venue always requires a careful examination of the facts peculiar to each case. The court also emphasizes that no one factor is predominant; there must always be a balancing of factors and an overriding policy of equity, since venue is a concept of fairness and convenience.

Applying these factors to the instant case, the court concludes that the defendant is not physically present in the state and does not maintain any facility in the Northern District of Georgia, thereby rendering factor number 4 inapplicable. With respect to factor number 5, the Fund does no business in Georgia by way of representatives, agents, subsidiaries, franchisees or other affiliates.

■ With respect to factor number 1, the nature of the defendant's business is to enter into agreements with employers in various locations in the state and through-

**3.** This court notes that in *Cable News Network, Inc. v. American Broadcasting Companies, Inc.,* 528 F.Supp. 365 (N.D.Ga.1981) although Judge Evans construed the "doing business" requirement broadly, the facts and contacts of the defendant were such in that case that the court further stated, "Even if a higher threshold were required for federal venue, the court is not persuaded that NABET's contacts with the forum are insufficient to meet that more rigorous standard." 528 F.Supp. at 368.

**4.** In examining the pattern and amount of business activity in the district, this court would require more than a "minimum contact" with the forum, but the activity does not have to be so substantial as that required by the district court in *Remington-Rand v. Knapp-Monarch, Inc.,* 139 F.Supp. 613 (E.D.Pa.1956), which required that corporate activity of such a nature so as to localize the business in the area and be such that a license would be required.

out the United States to provide pension benefits for employees. These contracts are negotiated during the collective bargaining process and are for a set term, usually two years, at which time they are subject to renegotiation. It is important to note here that the business of a defendant like the Fund is to enter into these contracts, receive contributions, and subsequently make payments to those employers who are parties to the contracts. That was the business of the defendant in this case which was ultimately consummated in this district and in this state with the plaintiff's subsidiaries.

With respect to factor number 2, it is clear that the contracts between the Fund and the plaintiff's subsidiaries were continuous and systematic, representing a steady pattern of business activity. Thirteen employers have made or are making contributions to the Fund on behalf of employees within the state of Georgia for fiscal years 1980, 1981, and 1982. The total annual contributions made by these employers may be broken down as follows: (1) $3,288,-959.17 for 1980, (2) $3,602,731.89 for 1981, and (3) $4,324,262.98 for 1982. Atlanta Baking Company alone has paid approximately $450,000 to the Fund from 1976 through 1980. In addition to receiving these contributions from Georgia employers, the Fund has made payments of pension or retirement benefits to Fund beneficiaries in Georgia as follows: (1) in 1980, payments in the amount of $1,490,404.27 to 476 Georgia beneficiaries, (2) in 1981, payments in the amount of $1,807,449.85 to 520 Georgia beneficiaries, and (3) in 1982, payments in the amount of $2,139,672.37 to 516 Georgia beneficiaries. (Affidavit of Robert D. Martin)

The defendant emphasizes that only 2% of fund contributions come from employers within the Northern District of Georgia and only 2% of benefits are paid to pensioners within this judicial district. The defendant also cites a case from *California, Mr. Pleat v. ILGWU National Retirement Fund,* No. 82–1622 AAH(Gx), (C.D.Calif.1982), which examined the amount of business carried on by the defendant in the district and found

that less than 1% of the total employer contributions received by the Fund were located in the Central District of California. Based on that finding, the court held that the Fund was not doing business in California. This court realizes that each case involving a challenge to venue must be examined separately on that case's particular facts and furthermore declines to agree with the ruling of the California district court. Although the business done in the Northern District of Georgia may represent only 2% of the Fund's total business, that numerical figure does not negate the fact that for several years the Fund has been actively involved in the pension plans of numerous Georgia residents and has received a substantial amount of contributions from Georgia employers, which represented the very nature of the Fund's business.

With respect to factor number 3, the actual contacts with or in the forum, the defendant also cites the case of *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974), which held that a nonresident corporation whose only contacts with the forum are through the mail is not "doing business" in that forum. Since the Fund both received contributions and remitted payment of benefits through the mail, it contends that it is not "doing business" in the state. The defendant's reliance on *Honda Associates* is, however, misplaced. That case involved a situation in which the defendant, a California corporation, engaged in a mail order catalog business, sent out a total of twenty catalogs to potential customers in New York over a five-year period, and received only three mail orders with a total retail value of $37.00, representing only .33% of its sales of all goods during that time period. The Fund's mail contacts with Georgia residents are much more substantial than those in *Honda Associates,* and reflect a pattern of systematic business activity over several years.

With respect to other contacts, the plaintiff relies strongly on a meeting at the federal mediator's office in Atlanta, Geor-

gia, on July 25, 1980, which occurred during the course of collective bargaining sessions between Atlanta Baking Company and the Bakery and Confectionery Union bargaining committee. John J. Fleming, administrative director of the (pension) Fund, as well as the Bakery and Confectionary Union International Health Benefits Fund (Health Fund), attended this meeting at the request of the local union to compare the Health Fund with the health benefits plan of another group. On deposition, Mr. Fleming testified that he was present at that meeting only in his capacity as the administrative director of the Health Fund as opposed to the (pension) Fund, although he admitted that his expenses were split between the two funds. Mr. Fleming also testified that he may have answered certain questions about the (pension) Fund, but his testimony was not particularly convincing on this point and he continually testified that he could not recall what he might have said with respect to the pension benefits offered by the Fund.

The plaintiff also cites an occasion where an accountant of the Fund performed payroll audits of Georgia contributing employers in Thomasville, Macon, and Rome. The plaintiff further cites an occasion where Henry Moore, chairman of the Fund Communications Department, attended a meeting of the international union in Atlanta in 1980 and a conference on alcohol and drug abuse during 1979. The trips to Georgia by Mr. Moore are totally irrelevant to a determination of whether the Fund is doing business in this district, since they did not represent the routine business of the Fund. Nor is the appearance of an accountant to do a payroll audit in itself sufficient to constitute "doing business," since it is in the nature of an isolated transaction. Nor is this court persuaded that Mr. Fleming's appearance in Atlanta in 1980 constituted "doing business" in and of itself, since his testimony was very ambiguous regarding his status with the (pension) Fund.

Although these last two contacts—the payroll audits and the appearance of Mr. Fleming—are not enough to constitute "doing business" by themselves, when they are considered along with the nature and character of the Fund's business and its systematic business activity in the Northern District of Georgia, this court is convinced that the defendant is and has been doing business in this district for venue purposes, both pursuant to 28 U.S.C. § 1391(c) and 29 U.S.C. § 1451(d).

As a final argument, the defendant contends that even if venue is permissible in the Northern District of Georgia, this action should be transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a). The defendant submits that all of its witnesses, documents and plan records are located in the judicial district of Maryland and that those witnesses and documents will undoubtedly play a central role at trial.

In determining whether a particular case should be transferred pursuant to 28 U.S.C. § 1404(a), a court should give great weight to (1) the plaintiff's choice of forum, especially if the one he chooses is in the district in which he resides, (2) a showing that the witnesses who would be inconvenienced are key witnesses and their testimony cannot be effectively presented by depositions (in order to show this the movant must list names and addresses of witnesses and the nature of their testimony to his case and why he cannot properly present his case by using their depositions), and (3) whether other actions invoking the same or substantially similar subject matter are pending in the transferee district. *Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826 (N.D.Ga.1970). Applied in this case, these criteria clearly mandate against transfer.

■ Although the Fund argues that its witnesses and records are located in Maryland, it has not made the required showing specifying its key witnesses and the nature of their testimony, the necessity of their testimony, why it cannot properly present its case by using those witnesses' depositions. Nor has the defendant shown that other actions invoking the same or substantially similar subject matter are pending in the transferee district. If the transfer would merely shift inconvenience from one

party to another, the plaintiff's choice of forum should control. *Grey v. Continental Marketing Associates, Inc., supra.*

The plaintiff contends, and this court agrees, that witness convenience does not assume a special significance in this case since this is a constitutional challenge to provisions contained in ERISA. Live testimony has little significance, since the key issues in this action do not center on factual disputes and witness credibility but present questions of law for this court to determine.

Accordingly, the defendant's motions to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) and to transfer pursuant to 28 U.S.C. § 1404(a) are DENIED.

SO ORDERED, this 18th day of March, 1983.