DELTA AIR LINES, INC., James C. Meek and Salvador Sanchez, Jr., Plaintiffs,

v.

The WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND and Robert E. Adams, Joseph W. Ballew, Joel Crouch, Arthur W. Hademan, Donald L. Jerome, Ben Leal, Chuck Mack, Robert E. Marciel, Norbert R. Miller, Robert Pavolka, Michael J. Riley, Jim Roberts, Karl H. Ullman, Glenn M. Vance, John W. Bacon, Owen L. Bennett, Angelo Bruscas, Bernard Eilerts, Donald Engels, Nathan J. Fullmer, John H. Gibson, Joseph C. Kaspar, William F. Lubersky, David J. MacKenzie, Larry McDonald, Dan W. Murphy, James Patterson, and Norman C. Pixler, as Trustees of the Western Conference of Teamsters Pension Trust Fund, Defendants.

No. 1:88–cv–2199–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

May 17, 1989.

---

Helene Zimmerman Cohen, Philip C. Cook, Sidney Oslin Smith, Jr., Alston & Bird, Atlanta, Ga., Robert S. Harkey, David Michael Keen, Delta Air Lines, Inc., Hartsfield Intern. Airport, Atlanta, Ga., for Delta Air Lines, Inc.

George M. Weaver, England Weaver & Kytle, Atlanta, Ga., for James C. Meek and Salvador Sanchez, Jr.

James Purnell Groton, Sutherland, Asbill & Brennan, Atlanta, Ga., Harlan M. Richter, Kirke M. Hasson, Jason McDonell, Pillsbury Madison & Sutro, San Francisco, Cal., Thomas E. Workman, Jr., Steven O. Kramer, Howard Kroll, Pillsbury Madison & Sutro, Los Angeles, Cal., for defendants.

## ORDER

CAMP, District Judge.

The above-styled action is before the court on defendants' Motion to Dismiss, or in the alternative, to transfer this action on grounds of improper venue or for more convenient forum, or, in the alternative, to dismiss for lack of in personam jurisdiction. For the reasons stated below, this court GRANTS defendants' motion to transfer this action on grounds of improper venue.

## FACTS

Very few facts in this case are not in dispute. The following, however, is clear. This controversy arises out of the merger of Western Air Lines, Inc. and Delta Air Lines, Inc. Plaintiff Delta is a domestic and international air carrier. Western Air Lines contributed to the Western Conference of Teamsters Pension Trust Fund ("Western Teamsters Fund") on behalf of its Teamster employees in the western United States pursuant to its collective bargaining agreements with the Teamsters. After the merger with Delta, the collective bargaining agreements were terminated— Western Airlines withdrew from the Western Teamsters Fund. Therefore, pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), Delta incurred withdrawal liability to the Western Teamsters Fund. Plaintiff Delta is asserting, among other things, that this withdrawal liability should be adjusted.

Delta is incorporated in Delaware and its principal place of business is in Atlanta, Georgia. Plaintiffs Salvador Sanchez, Jr. and James C. Meek are citizens of the United States and reside in the Northern District of the State of Georgia. Sanchez and Meek are participants in the Western Teamsters Fund and are employed by Delta. Defendant Western Conference of Teamsters Pension Trust Fund is a multiemployer pension trust fund that is administered in Los Angeles, California; San Mateo, California; and Seattle, Washington. Defendant trustees, half of whom are employer trustees and half of whom are union trustees, govern the Western Team-

sters Fund. They all reside in the western United States.

In their complaint, plaintiffs seek relief pursuant to ERISA. In short, plaintiffs are seeking the transfer of assets and liabilities from the Western Teamsters Fund to the Delta Family–Care Retirement Plan ("the Plan") for Delta employees who are participants of the Western Teamsters Fund by virtue of earlier employment with Western Air Lines, which has been merged into Delta. Delta is also requesting a redetermination of their withdrawal liability and is alleging breaches of fiduciary duty on the part of the Western Teamsters Fund and its trustees.

The complaint was filed on September 29, 1988. Along with the complaint plaintiffs filed a motion to stay arbitration. On October 25, 1988, defendants filed a motion to dismiss because of improper venue, or, in the alternative, to transfer the case, or, in the alternative, to dismiss for lack of in personam jurisdiction. On November 3, 1988, this court reserved ruling on the motion to stay arbitration until the court rules on defendants' motion to dismiss. Extensive discovery pursuant to the latter motion ensued.

## LEGAL DISCUSSION

### a. Introduction

The legal issue before the court is whether or not venue of this action is proper in the Northern District of Georgia. Because plaintiffs have joined multiple causes of action, venue requirements of all causes of action must be satisfied. *Jones v. Bales,* 58 F.R.D. 453, 458 (N.D.Ga.1972), *affirmed per curiam,* 480 F.2d 805 (5th Cir.1973). Therefore, plaintiffs must show that venue

is proper in this District under both 29 U.S.C. § 1451(d) and 29 U.S.C. § 1132(e)(2).

■ The court, rather than a jury, decides contested fact issues relating to the venue question. *See* 15 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure,* § 3826 at 259. This court holds that the burden of establishing proper venue is on plaintiffs. Although some courts have held to the contrary, this court sides with the "clear weight of authority" which supports the policy that it is the plaintiff's obligation to institute the action in a permissible forum, both in terms of jurisdiction and venue. *Id. See also* 5 C. Wright and E. Miller, *Federal Practice and Procedure,* § 1352 at 568.[1] Plaintiffs cite to *Myers v. Am. Dental Assn.,* 695 F.2d 716 (3d Cir.1982) in support of the proposition that the burden should be on defendant. In *Myers* the court stated that courts putting the burden on plaintiffs were confusing "jurisdiction with venue". 695 F.2d at 724. The *Myers* court seems to be overlooking the fundamental and historical purpose of venue which is that there is a particular court or courts in which an action "should be brought" for the convenience of the parties, particularly that of defendant. 15 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure,* § 3802 at 7. Since the plaintiff brings the action, the burden should be on the plaintiff to institute it in the proper place. To hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue.

### b. Venue pursuant to 29 U.S.C. § 1451(d)

■ Section 1451(d) provides that:

---

1. A recent Eleventh Circuit case states that in "the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient". *In re Ricoh Corporation,* 870 F.2d 570, 573 (11th Cir.1988). Section 1404(a), however, involves the situation where the plaintiff has picked a proper forum and and the movant is requesting a more convenient forum. As the 11th Circuit noted, in such a case plaintiff's choice of forum should be given considerable

deference. *Ibid. See also* 15 C. Wright & E. Miller and E. Cooper, *Federal Practice and Procedure,* § 3848, p. 375; *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 258 n. 26, 102 S.Ct. 252, 267 n. 26, 70 L.Ed.2d 419 (1981) ("As we have explained, however, dismissals on grounds of forum non conveniens and § 1404(a) are not directly comparable.") Nevertheless, even if the burden in the instant case was on the movant, this court's holding would be the same.

An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business ...

29 U.S.C. § 1451(d). Plaintiffs cite to *Boyer v. J.A. Majors Company Employees' Profit Sharing Plan*, 481 F.Supp. 454 (N.D.Ga.1979) as authority for the proposition that venue is proper under § 1451(d). However, that case construed § 1132(e)(2) which is a narrower venue provision because it does not include "doing business" as a possible factor that can trigger venue. A close reading of *Boyer* evidences that court's awareness of the latter point: "to say that it 'resides or may be found' in Georgia since it is 'doing business' there is too strained an analogy." 481 F.Supp. at 458. Clearly the court is saying that just because defendant is "doing business" in the district, does not mean that defendant "resides or may be found" in the district within the meaning of § 1132(e)(2). In contrast, this court must also consider § 1451(d) which does indeed include "doing business" as a factor that can trigger proper venue and is therefore a broader venue provision.

Plaintiffs concede that the Western Teamsters Fund is not "administered" in this district within the meaning of § 1451(d). Nor is there anything in the record that demonstrates that any of defendants "reside" in this district. Therefore, plaintiffs must demonstrate that defendants "do business" in this district. This plaintiffs have wholly failed to do.

Plaintiffs correctly cite to *Flowers Industries, Inc. v. Bakery and Confectionery Union and Industry International Pension Fund*, 565 F.Supp. 286 (N.D.Ga. 1983) as the leading decision interpreting whether venue is proper under § 1451(d). The court in *Flowers* stated that the concept of "doing business" incorporated in the venue statutes is a narrower concept than the "transacting business" requirement of the Georgia Long Arm Statute, and likewise requires more than the constitutional due process standards for personal jurisdiction set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). 565 F.Supp. at 291. This is because, as mentioned above, the venue statutes are designed to: 1) protect defendants from inconvenience with regard to the forum where the case may be tried, and 2) to place the trial in a place having a logical connection with the parties to the litigation. This in contrast to the purpose of long arm statutes which is to protect plaintiffs by allowing local suits against foreign defendants who have purposefully availed themselves of the privilege of doing business in the forum. *Id.*

There is little or no logical connection between the Northern District of Georgia and the instant litigation. A ruling of proper venue would certainly run contrary to the policy of protecting defendants from inconvenience with regard to the forum where the case may be tried. Defendant Western Teamsters Fund is administered solely in California and Washington. All defendant trustees reside and have places of businesses in the western states. The Western Teamsters Fund has no employees or agents in Georgia, no bank accounts in Georgia, no meetings in Georgia, and only incidental administrative contact with Georgia. The collective bargaining agreements at issue under which contributions have been made to the Western Teamsters Fund were negotiated and entered into with union locals which, according to the record, are all located in the western United States. Additionally, the alleged wrongful decisions in the instant action purportedly took place in the western United States.

The *Flowers* court, while recognizing that there is no exact formula for determining whether a defendant is doing business within the forum district, lists five factors which should be given consideration: "1) the character and nature of the business, 2) the continuity of the business operations in the district (is it of a systematic nature so as to constitute a pattern of business activity, or is it merely composed of a single transaction or a single visit with the state), 3) the number of contacts with the district (*e.g.*, the court will examine such contacts as meetings, telephone calls, mailings, solicitations, and negotiations ...), 4) the physical presence of the defendant in the

forum (does the defendant maintain an office or other facility in the district, maintain a bank account, telephone listing, post office box, or own any property or other assets in the district), and 5) the method of doing business (is it by way of direct representative, agent, subsidiary, franchise, or other affiliate, or is the defendant a common carrier)". *Id.*

With regard to the first factor, the nature and character of the business, defendants argue that the legislative history of the ERISA and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") indicates that Congress intended the venue provisions of § 1451 to be construed for the protection of multiemployer pension plans in litigation with employers. (*See* defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss, *etc.* pps. 25–28). The court is convinced by this argument. The nature of a pension trust fund, such as the one at hand, is different than most "businesses". It is not set up as a profit-making endeavor per se, but rather to protect workers and their respective employers by fostering the strength of the pension plans and minimizing costs. Except in a few rare cases, which will be discussed later, the Western Teamsters Fund was set up to administer pension plans that are funded by employers, for their employees, for work done in the western United States. Western Air Lines was a participant in the Western Teamsters Fund. According to the record, Western Air Lines had no flights to Georgia, no ticketing office in Georgia, and no office or agent in Georgia. It would be absurd for this court to require the Western Teamsters Fund to be haled into court in Atlanta, Georgia, simply because one of its participants that was located in the western United States merged with a Georgia-based air line. Delta currently has no relationship with the Western Teamsters Fund— other than the fact that some of its employees, former employees of Western Air Lines, have vested benefits with the Western Teamsters Fund for work they performed in the western United States with Western Air Lines.

In sum, the character and nature of a pension trust fund is very relevant in determining whether venue is proper. It would contravene the Congressional policy of minimizing the costs and facilitating the functioning of pension plans to require the Western Teamsters Fund to go to Atlanta for this law suit.

The second and third factors listed in *Flowers* for determining what constitutes "doing business" are: 2) the continuity of the business operations in the district; and 3) the number of contacts with the district. Plaintiffs have submitted to the record an abundance of alleged evidence of defendants' business contacts with this district. However, nothing plaintiff submits convinces this court that the venue requirement of "doing business" under § 1451(d) have been met.

Plaintiffs claim that the Western Teamsters Fund has entered into four direct agreements with three Georgia employers which currently provide for contributions to the Fund. These employers have nothing to do with this law suit. More importantly, after a careful review of the record, it has become clear that these alleged agreements were entered into in the western United States *for work performed in the western United States* with union locals located in the western United States. By plaintiffs' own admission the Western Teamsters Fund is administered in the western United States. It is irrelevant that a parent company in Georgia happens to be the administrative center of a contributing employer from which contributions are sent. What is important for purposes of the current determination is that all the work and pension credits were earned in the western United States. *See Varsic v. U.S. District Court,* 607 F.2d 245 (9th Cir. 1979) (a Fund is "found" in a district for venue purposes if participants have *worked and earned credits* in that district).

Plaintiffs would also have the venue statute triggered because the Western Teamsters Fund is receiving contributions on behalf of at least eight individuals for services currently being performed in Georgia. Once again these individuals are not for-

mer employees of Western Air Lines and have nothing to do with this suit. Nevertheless, they are only eight out of 400,000 total participants which constitutes only .002% of all participants to the fund. Additionally, the eight individuals all formerly worked in the western United States and were party to an agreement which allowed an employee to perform covered work elsewhere. According to the record, only one such agreement exists and it is highly unusual compared to the normal practice of the fund. In every other case the court is aware of, as was the case of Western Air Lines, when an employer leaves the area in which the fund is administered, it withdraws from active participation in the Fund. This court is unable to find that this minimal active participation is of the "systematic" type necessary to find proper venue.

Plaintiff Delta argues that it employs approximately 434 employees who are participants of the Western Teamsters Fund. This, for the reasons mentioned above, is obviously a misleading and irrelevant fact. The employees Delta is referring to merely have a vested interest from past work performed for Western Air Lines in the western United States. Delta is not currently contributing to the Western Teamsters Fund.

Plaintiffs argue that employees of the Western Teamsters Trust Fund performed an audit of Delta in Atlanta. This is also an irrelevant fact. The audit was performed after the merger and thus after the Western Air Lines employees had withdrawn from active participation in the Fund and was necessary because Delta had moved Western Air Lines' payroll records to Atlanta. Moreover, the very case plaintiffs cite as authority for their position, *Flowers*, specifically states that such audits are insufficient to constitute "routine business". 565 F.Supp. at 293.

Plaintiffs also state that 84 individuals who reside in Georgia receive benefits from the Western Teamsters Fund. But this is for work performed in the western United States. These 84 individuals have unilaterally decided to move to Georgia, apparently to retire. If the types of contacts plaintiffs are referring to is sufficient to trigger the venue statute, the Western Teamsters Fund could be haled into court in practically every district in the country.

This court has reviewed the rest of the alleged business contacts that defendants have submitted as evidence of "doing business", including those that relate to the fourth and fifth factors in *Flowers*. All the alleged contacts are tenuous at best and certainly do not merit requiring the Western Teamsters Fund to be haled into this district.

Although the *Flowers* court ruled in favor of proper venue, the fact situation was clearly distinguishable from the instant case. In *Flowers* thirteen employers made contributions to the Fund on behalf of employees *within the state of Georgia*, including the Atlanta-based Atlanta Baking Company. 565 F.Supp. at 292. The Fund was administered in Maryland, and at issue was the withdrawal liability of three subsidiaries of Flowers Industries which were located in South Carolina, Georgia and Texas. It is apparent from a fair reading of *Flowers* that it was a matter of common occurrence for the Fund to be actively involved with employers in the eastern United States, including Georgia, for work performed in the eastern United States. This court need not belabor the obvious point that any connection the Western Teamsters Fund has or has had with Georgia is or was extraordinary, and certainly not "continuous and systematic" as it was in *Flowers*.[2]

In conclusion, it would be helpful to consider notions of personal jurisdiction by

---

2. This court agrees with the *Flowers* court that although total employer contributions received by a Fund may only total 1%, venue still may be proper (disagreeing with *Mr. Pleat v. ILGWU Nat. Retirement Fund,* 4 Emp. Ben. Cas. 1154 (C.D.Cal.1982). As indicated above, however, the record is clear that only eight out of 400,000 participants are currently doing work in Georgia, all of whom used to work in the Western United States, and have continued their relationship with the Fund pursuant to an agreement that is highly unusual to the common practice of the Fund.

analogy.[3] The Western Teamsters Fund is administered in the western United States for the benefit of work almost entirely performed in the West. It would take an extraordinary reading of the record to conclude that the Fund has "purposefully availed itself" of business opportunities in the Northern District of Georgia within the meaning of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover this court would be hardpressed to conclude that the Western Teamsters Fund could have "reasonably foreseen" being haled into court in this district. *See World–Wide Volkswagen Corp., et al v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Therefore, this court finds that venue is improper in the Northern District of Georgia pursuant to 29 U.S.C. § 1451(d).

c. Venue pursuant to 29 U.S.C. § 1132(e)(2)

Section 1132(e)(2) provides that where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found ...

29 U.S.C. § 1132(e)(2). Although somewhat similar to § 1451(d), § 1132(e)(2) is substantially narrower than § 1451(d) because it does not contain "doing business" as a possible factor that might trigger venue.

There is nothing in the record that shows that the plan is administered in this district, that any defendant resides in this district, or that any defendant may be found in this district. Plaintiff cites to *Varsic v. U.S. District Court*, 607 F.2d 245 (9th Cir.1979) as authority for the proposition that venue is proper in the Northern District of Georgia pursuant to § 1132(e)(2). But *Varsic* stands for the opposite conclusion. The court in *Varsic* states that a fund can be "found" in a district where employees *perform their work and earn their pension credits*. 607 F.2d at 247–8. For the reasons stated above, it is clear that plaintiffs have fallen short of proving this point. It is also clear that the alleged breach took place where the Fund is administered, which is in Washington and California, not in the Northern District of Georgia.[4]

Therefore, this court finds that venue is improper in the Northern District of Georgia pursuant to § 1132(e)(2).

## CONCLUSION

Since venue is improper, this court has the option of either dismissing the case or transferring it to the district "in which it could have been brought." 28 U.S.C. § 1406(a). It appears that venue would be proper as to all of the parties in the Southern District of California. It is therefore ordered that Civil Action No. C88–2199 be transferred to the United States District Court for the Southern District of California for such proceedings as that court deems proper.

SO ORDERED.

---

**3.** In fact another case from this district, *Cable News Network, Inc. v. American Broadcasting Companies, Inc.*, 528 F.Supp. 365 (N.D.Ga.1981), has held that the "doing business" requirement is satisfied if the defendant has sufficient contacts with the forum district to meet the constitutional due process standards for personal jurisdiction as set forth in *International Shoe Co. v. State of Wash. Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The *Flowers* court declined to follow this expansive approach. This court feels that the more narrow view of *Flowers* is appropriate. Notwithstanding, this court holds that even if it were to use the *Cable News* approach, venue would still be improper in this district.

**4.** Another leading decision in this district that lends support to a ruling of improper venue in this case is *Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan*, 481 F.Supp. 454 (N.D.Ga. 1979). This court, however, disagrees with defendants' interpretation of *Boyer*—that the sole factor in determining where proper venue lies depends on where the Fund is administered. The *Boyer* court specifically states that where the defendant "resides" and where the defendant "may be found" are factors in determining proper venue. 481 F.Supp. at 458.