**COMMERCIAL EQUIPMENT COMPANY, INC., Plaintiff,**

v.

**BARCLAY FURNITURE CO., Defendant.**

**No. C–C–90–14–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 18, 1990.

Robert L. Burchette, Johnston Taylor Allison & Hord, Charlotte, N.C., for plaintiff.

F. Joseph Treacy, Jr., Petree Stockton & Robinson, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on the Defendant's Motion to Transfer Venue, filed March 5, 1990, pursuant to 28 U.S.C. § 1404(a). The Defendant, Barclay Furniture Co. (hereafter "Barclay"), is seeking a transfer of this case to the United States District Court for the Northern District of Mississippi, arguably because of the interests of justice and the convenience of the parties and witnesses. The Plaintiff, Commercial Equipment Company, Inc. (hereafter "Commercial"), timely has responded to Barclay's Motion and opposes the transfer. The parties have inundated the Court with affidavits from potential witnesses in the case. Before disposing of Barclay's Motion to Transfer Venue, the Court carefully considered all of the submissions of both Barclay and Commercial.

Neither Barclay nor Commercial has requested a hearing on Barclay's Motion. Based on the parties' submissions, the Court believes that a hearing would not meaningfully assist the Court in its resolution of the issues.

## I. FACTUAL BACKGROUND

Commercial is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. Barclay is a Mississippi corporation with its principal place of business in Sherman, Mississippi. On January 16, 1990, Commercial filed its Complaint against Barclay. Commercial is seeking damages allegedly arising out of Barclay's anticipatory and actual breaches of a Vehicle Lease Agreement executed by, and subsequently amended by, both Commercial and Barclay (hereafter "the Agreement").

According to the pleadings, on or about February 9, 1988, Commercial and Barclay executed the Agreement in connection with Commercial's lease of tractor-trailers (hereafter "the Equipment") to Barclay. The Agreement's terms provided Commercial with the option, upon Barclay's cancellation of the Agreement, to require Barclay to purchase the Equipment from Commercial. On November 14, 1989, Barclay cancelled the Agreement. Commercial subsequently advised Barclay that it intended to exercise its option provided in the Agreement. Barclay, however, has refused to purchase the Equipment on the grounds that Commercial breached the Agreement by, among other things:

1. Failing to use diligent and concerted efforts, as required in the Agreement, to replace some specifically identified Equipment with other specifically identified types of equipment;

2. Failing properly to replace specified equipment, as required in the Agreement;

3. Failing properly to upgrade some of the engines in the Equipment, as required in the Agreement;

4. Failing properly to maintain and service the Equipment, as required in the Agreement; and

5. Essentially over-charging Barclay mileage rates for the Equipment.

Barclay claims that Commercial's breaches resulted in the loss of revenues and justified its cancellation of the Agreement.

## II. APPLICABLE LAW

Section 1404(a) of Title 28 of the United States Code provides as follows:

(a) For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1982). The resolution of a motion to transfer a case under section 1404(a) rests in the sound discretion of the district court. *Bates v. J.C. Penney Co.,* 624 F.Supp. 226, 227 (W.D.N.C.1985).

■ This Court long has recognized that in considering a motion to transfer pursuant to section 1404(a), a court ordinarily should accord the plaintiff's choice of forum great weight. *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446, 451 (W.D.N.C.1989); *Phillips v. S. Gumpert Co.,* 627 F.Supp. 725, 727 (W.D.N.C.1986); *Bates,* 624 F.Supp. at 227; *Western Steer–Mom 'N' Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 265 (W.D.N.C.1984). This Court has acknowledged also that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed." *Datasouth,* 719 F.Supp. at 451 (citations omitted). A defendant moving for a transfer of forum from a district in which venue is proper carries a particularly heavy burden. *Phillips,* 627 F.Supp. at 726–27; *Bates,* 624 F.Supp. at 227; *DMP Corp. v. Fruehauf Corp.,* 617 F.Supp. 76, 77 (W.D.N.C.1985). A court should not disturb the plaintiff's choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another district. *More-*

*head v. Barksdale,* 263 F.2d 117, 119 (4th Cir.1959); *Phillips,* 627 F.Supp. at 726–27; *Bates,* 624 F.Supp. at 227; *A.L. Williams & Assoc., Inc. v. D.R. Richardson & Assoc., Inc.,* 98 F.R.D. 748, 754 (N.D.Ga.1983). Because of the plaintiff's initial right to choose the forum, a court should refrain from transferring an action if the transfer merely would shift the inconvenience from one party to another. *See DMP Corp.,* 617 F.Supp. at 77; *Flowers Indus., Inc. v. Baker & Confectionery Union,* 565 F.Supp. 286, 293–94 (N.D.Ga.1983); *see* 1A Pt. 2 J. Moore, W. Taggart, A. Vestal, J. Wicker, & B. Ringle, *Moore's Federal Practice* Para. .345[5] (2d. ed. 1990).

■ In considering a motion to transfer, a court should consider, among other things, the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home; the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and the avoidance of unnecessary problems with conflict of laws. *See Datasouth,* 719 F.Supp. at 450; *DMP Corp.,* 617 F.Supp. at 77; *see also* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 3847–3854 (1976); 1A Pt. 2 J. Moore, W. Taggart, A. Vestal, J. Wicker, & B. Ringle, *Moore's Federal Practice* Para. .345[5] (2d. ed. 1990). This Court has recognized that the analysis of these factors is qualitative, not merely quantitative. *See Datasouth,* 719 F.Supp. at 450 (quoting *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1255–57 (E.D.Va.1988)).

## III. DISCUSSION

Before considering the convenience of the parties and the interests of justice, a court ordinarily must consider whether venue is proper in the transferor forum and whether the transferee forum is a district in which the action could have been brought. *See Datasouth*, 719 F.Supp. at 450. The parties essentially concede, however, that the only issue before the Court is whether the convenience of the parties and witnesses and the interests of justice favor the transfer of this case to the United States District Court for the Northern District of Mississippi. The Court, therefore, will not discuss any of the prerequisites to a transfer pursuant to section 1404(a). The Court, instead, will consider each of the twelve factors previously identified as relevant to the disposition of Barclay's Motion to Transfer Venue.

First, the Court finds that Commercial's initial choice of forum clearly favors the position of Commercial and the adjudication of this dispute in North Carolina. The Court must give Commercial's initial choice considerable weight in determining the appropriate place for the adjudication of this dispute.

Second, the Court finds that the residence of the parties does not favor the position of either party. Commercial is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. Barclay is a Mississippi corporation with its principal place of business in Sherman, Mississippi, which is within the Northern District of Mississippi. Regardless of the place of adjudication, one party will "have the home field advantage" and will be able to adjudicate this dispute near its principal place of business.

Third, the Court finds that the relative ease of access of proof neither favors the position of Barclay nor favors the position of Commercial. Commercial's records and financial information all apparently are in its offices in Charlotte, North Carolina. Barclay's records and financial information all apparently are located in its Sherman, Mississippi offices. Regardless of the forum for this trial, one of the parties will suffer inconvenience in transporting the documents to another forum.

Fourth, the Court finds that the availability of compulsory process for attendance of witnesses and the costs of obtaining the attendance of willing witnesses fails to favor the position of either Commercial or Barclay. The Court justifies this finding from the affidavit testimony presented by the parties.

Barclay intends to call approximately twenty-three witnesses, all of whom reside in Mississippi. Barclay intends to call eleven non-employee witnesses to testify materially to its defense that Commercial in fact breached the Agreement. Barclay contends, upon belief, that the eleven non-employee witnesses voluntarily will not travel to North Carolina. Barclay contends, further, that the trial in Mississippi will take place conveniently close to the residences of these eleven non-employee witnesses. Barclay intends to call ten truck drivers, who are Barclay employees, to testify about the alleged condition, poor performance, and maintenance of the Equipment. Barclay also intends to call two other witnesses, who are Barclay employees, to testify materially about Commercial's alleged breach.

Commercial, on the other hand, intends to call numerous witnesses, many of whom reside in North Carolina. Commercial intends to call seven of its employees whose work related to activities involving the Commercial–Barclay Agreement. Commercial also intends to call five non-employee witnesses to testify about the Equipment that Commercial furnished Barclay pursuant to the Agreement. Three of these witnesses have stated that they voluntarily would not travel to Mississippi for this trial. Commercial intends also to call two other non-employee witnesses to testify about Barclay's licensing of the Equipment and problems with the Equipment. Commercial intends to call five non-employee witnesses to testify about Commercial's attempts to sell or lease the Equipment made available by Barclay. Two of these witnesses have stated that they voluntarily would not travel to Mississippi for this

trial. Commercial also has presented the Court with affidavit testimony contradicting Barclay's belief that the non-employee witnesses living in Mississippi would not travel to North Carolina to testify.

All in all, it appears to this Court that regardless of where this trial takes place, one party will not be able to compel the attendance of all of its trial witnesses and, if so, may have to forego some live testimony, in favor of deposition testimony. It also appears that in reference to the cost of obtaining the attendance of willing witnesses, one party will incur expense and its witnesses will incur inconvenience, regardless of where this trial takes place. The record, however, fails to contain comparative data on the relative ability of Commercial and Barclay to bear these expenses.

Fifth, the Court finds that the possibility or necessity of a jury view is a factor that does not favor Barclay's position. This dispute involves an alleged breach of contract and it does not appear that a view of the Equipment, which is located in the Northern District of Mississippi, will be necessary. Even if it becomes necessary for the jury to look at the Equipment, the parties have failed to show any disadvantage or impracticality to the use of photographs to illustrate testimony about the Equipment. Moreover, if a view becomes necessary, the very nature of the Equipment would not make it impossible, or even difficult, for the Equipment to be brought to the Western District of North Carolina. For all of these reasons, the possibility or necessity of a jury view does not require the transfer to the Northern District of Mississippi.

Sixth, the Court finds that the enforceability of a judgment, if obtained, fails to impact the Court's decision in any significant manner. Barclay apparently does not have any property in the Western District of North Carolina. Regardless of where a judgment might be obtained, enforceability of the judgment necessarily will have to occur in Mississippi. The record fails to contain any evidence, however, that a judgment, if obtained in North Carolina, could not be transferred and enforced in Mississippi.

Seventh, the Court finds that the relative advantages and obstacles to a fair trial favors neither Commercial or Barclay. Regardless of where this case is tried, it is likely that one party will have to use deposition testimony as a substitute for live testimony because of the inability to compel the attendance of some witnesses.

Eighth, the Court finds that no practical problems exist to favor the position advocated by Commercial or Barclay. Regardless of where this case is tried, the potential exists for disruption to occur in one party's business because of the necessity of having witnesses available for trial in a foreign forum. This effect, however, is roughly equivalent for each party and, therefore, does not significantly impact the Court's decision. Because of the apparent lack of related cases presently pending before this or any other court, judicial economy does not affect the Court's decision.

Ninth, the Court finds that the administrative difficulties of court congestion favors the position of Commercial. Barclay has provided the Court with some relevant statistics pertaining to court congestion in the Northern District of Mississippi and the Western District of North Carolina.

| OVERALL WORKLOAD STATISTICS | W.D.N.C. | N.D. Miss. |
|---|---|---|
| Filings | 1,372 | 1,321 |
| Terminations | 1,462 | 1,370 |
| Pending | 928 | 1,338 |
| **ACTIONS PER JUDGESHIP** | | |
| Number of Judgeships | 3 | 3 |
| Filings of Civil Cases | 330 | 440 |
| Pending Cases | 309 | 446 |
| **MEDIAN TIMES--CIVIL (in months)** | | |
| From Filing to Disposition | 9 | 12 |
| From Issue to Trial | 12 | 19 |
| **CIVIL CASES OVER THREE YEARS OLD** | | |
| Number of Cases | 18 | 80 |
| Percentage of Cases | 2.4 % | 6.3 % |

Administrative Office of the United States Courts, *Federal Court Management Statistics, 1989* 68, 80. If this Court denies the Motion to Transfer and this case remains in North Carolina, the Clerk likely will place this case on a published trial calendar within the next five months, probably November 1990 at the earliest. Based upon the above statistics, it appears that if transferred to Mississippi, this case will appear for trial in about twelve months, which would be in June 1991. The Court is of the opinion, therefore, that the trial of this matter will take place at an earlier time in North Carolina, possibly as early as November 1990. The Court concludes, accordingly, that the congestion of the court system effectively favors the position of Commercial.

Tenth, the Court finds that the interest in having localized controversies settled at home favors neither the position of Commercial nor the position of Barclay. Both parties concede this finding. Because Commercial's principal place of business is Charlotte, this District has an interest in the issues in, and outcome of, this action. Because Barclay's principal place of business is the Northern District of Mississippi, the Northern District of Mississippi has an interest in the issues in, and outcome of, this action. Although the Equipment, which serves as the basis for this lawsuit, is located in Mississippi, this lawsuit cannot really be thought of as purely a Mississippi action.

Eleventh, the Court finds that the propriety in having the trial in a forum that is at home with the governing state law really does not require the transfer of this case to the Northern District of Mississippi. At this stage of the proceedings, the parties apparently dispute whether the law governing this dispute will be North Carolina law or Mississippi law. If the governing law is the law of North Carolina, it would be beneficial for this Court to apply its own law. If the governing law is the law of Mississippi, it arguably would be more beneficial for Mississippi courts to apply Mississippi law. Barclay, however, has failed to demonstrate to this Court any reason that this Court could not apply correctly Mississippi law to the issues in this case or to argue to this Court that Mississippi law in the relevant areas is so unsettled that a Mississippi court should resolve the relevant issues.

And, twelfth, the Court finds that no choice of law problems appear in this case

and that, therefore, this factor does not favor the position of either Commercial or Barclay. Both Commercial and Barclay concede these findings.

 The Court now has considered individually each of the relevant factors. To more effectively summarize its findings, the Court will group the factors into three categories: Those factors that do not favor the position of either party, those factors that favor Barclay's position (and, thus, the adjudication in Mississippi), and those factors that favor Commercial's position (and, thus, the adjudication in North Carolina).

Eight factors essentially failed significantly to impact the Court's decision and, therefore, effectively do not tip the balance in favor of either party. Those factors are the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; any other practical problems; the interest in having localized controversies settled at home; and the possibility of choice of law problems.

Four factors favored the position of Commercial and the adjudication of this dispute in North Carolina. Those factors are Commercial's initial choice of forum, the possibility of a jury view, the administrative difficulties of court congestion, and the propriety in having the trial in a forum that is at home with the governing state law.

No factors, however, favored Barclay's position and the adjudication of this dispute in Mississippi.

The Court has engaged in a careful scrutiny of all of the relevant factors and analyzed the relevant factors on a qualitative basis, rather than on a mere quantitative basis. *See Datasouth*, 719 F.Supp. at 450. The Court finds that Barclay has failed to satisfy its burden of showing that a transfer is necessary in the interests of justice or for the convenience of the witnesses. The Court finds, further, that a transfer of this case to the Northern District of Mississippi merely would shift the inconvenience from one party to another. *See DMP Corp.*, 617 F.Supp. at 77; *Flowers Indus.*, 565 F.Supp. at 293–94. After reviewing all of the relevant factors, the Court concludes that this case should not be transferred to, and tried in, Mississippi. The Court, therefore, will deny Barclay's Motion to Transfer Venue.

## IV. MISCELLANEOUS DISCUSSION

On April 10, 1990, this Court entered an Order staying discovery until the disposition of Barclay's Motion to Transfer Venue and allowing the parties one-hundred (100) days from the disposition of Barclay's Motion to Transfer Venue to complete discovery of every kind, except requests for admission. Because the Court now is ruling on Barclay's Motion to Transfer Venue, the Court will vacate the previously-imposed stay of discovery.

## V. ORDER OF THE COURT

NOW, THEREFORE, IT IS ORDERED that (1) Barclay's Motion to Transfer Venue be, and hereby is, DENIED; (2) the Court's previously-imposed stay of discovery be, and hereby is, VACATED; and (3) the parties shall have one-hundred (100) days from the filing date of this Order, up to and including September 24, 1990, to complete discovery of every kind, except requests for admission.