Kevin K. CARCELLA

v.

L & L COACH LINES, INC., a Maryland Corporation and Donald Mennick and Bob Quick and Earl Quick, Individually and trading as Quick Bus Sales and General Tire and Rubber Company.

Civ. No. K–83–1189.

United States District Court, D. Maryland.

July 27, 1984.

Paul D. Bekman, Daniel S. Katz and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., for plaintiff.

Russell R. Marks, Hagerstown, Md., for defendant L & L Coach Lines, Inc.

William S. Barton, William P. Nairn and Byron, Urner, Nairn & Barton, Hagerstown, Md., for defendants Robert Quick, Earl Quick and Quick Bus Sales.

James E. Gray, Thomas M. Goss and Semmes, Bowen & Semmes, Baltimore, Md., for defendant The General Tire & Rubber Co.

FRANK A. KAUFMAN, Chief Judge.

This case arises out of injuries which plaintiff, a citizen of the State of Texas, allegedly suffered in a bus accident which occurred on Interstate Route 95 near Ladysmith, Virginia on April 14, 1981. De-

fendants are The General Tire & Rubber Co., an Ohio corporation with its principal place of business in Ohio, L & L Coach Lines, Inc. (L & L), a Maryland corporation with its principal place of business in Maryland, Donald Mennick, a citizen of the State of Maryland, Earl Quick and Robert Quick, citizens of the State of Virginia, and Quick Bus Sales, a partnership whose status is discussed *infra*. However, in any event, diversity—and therefore subject matter—jurisdiction exists herein.

## FACTS AND LONG ARM PERSONAL JURISDICTION

Pending is a motion to dismiss for lack of personal jurisdiction and for lack of venue filed by defendants Robert Quick, Earl Quick and Quick Bus Sales. The facts relevant to the disposition of that motion are undisputed.[1] Quick Bus Sales is a partnership with a Staunton, Virginia, address. The sole partners are defendants Earl and Robert Quick, both citizens of Virginia. The business of Quick Bus Sales is the purchase and resale of used buses. In support of the motion to dismiss, defendants stress that Quick Bus Sales does not directly solicit any out-of-Virginia sales; that such sales are the result of telephone inquiries made to Quick Bus Sales by its potential customers; and that buses sold by it to out-of-state customers are picked up by the purchasers in Virginia. Plaintiff, in opposition to the motion to dismiss, points to the volume of sales to Maryland customers and to other contacts with those customers. From 1977 to 1983, the record shows that Quick Bus Sales sold six buses to Maryland purchasers. Those six sales represented from .7% to 11% of Quick Bus Sales' revenues during each of those years. Five of the six buses were sold to defendant L & L, a citizen of the State of Maryland. One of those five was the bus involved in the accident in issue in this case. It was purchased by Robert Quick in Pennsylvania and brought from that state through Maryland to Virginia.

Plaintiff also notes that in the recent past Robert Quick has visited L & L's Maryland headquarters on the average of two or three times per year,[2] and has been travelling through Maryland some three to five times per year to purchase buses from areas north of Maryland.

■ On the basis of those facts, this Court concluded in a hearing held on the record on December 19, 1983 that the requirements of section (b)(4) of the Maryland Long Arm statute (Mds.Cts. & Jud. Proc.Code Ann. § 6–103 (1980)) are met.[3] *See Ajax Realty Corp. v. J.F. Zook, Inc.*, 493 F.2d 818, 821–22 (4th Cir.1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973) (Winter, J.) (interpreting the term "substantial revenue" in the Virginia Long Arm statute); *United Merchants & Manufacturers, Inc. v. David & Dash, Inc.*, 439 F.Supp. 1078, 1083–85 (D.Md.1977) (Watkins, J.). In those cases, the Long Arm statute involved was held applicable and such application was held constitutional. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), Justice White wrote:

[I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distribu-

---

**1.** The facts set out in this opinion are drawn from the deposition of defendant Robert L. Quick. Defendants Earl Quick and Quick Bus Sales have agreed to be bound by the statements of Robert L. Quick during the taking of his deposition.

**2.** While nonbusiness reasons for those trips have been stated by Robert Quick, the latter's deposition indicates that those trips were not entirely unrelated to business, and that business of Quick Bus Sales was discussed during those visits to L & L. *See* deposition of Robert Quick, pages 51–55.

**3.** Section (b)(4) states:

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

. . . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufacturer products used or consumed in the State; ....

tor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. at 297–98, 100 S.Ct. at 567. While the accident alleged in this case occurred in Virginia, so that the forum state is not the situs of the accident, the within case, for reasons set forth herein, has substantial relation to Maryland.

During the hearing held on December 19, 1983, this Court discussed not only the applicability of section (b)(4) but also the possible applicability of section (b)(1) of the Maryland Long Arm statute,[4] and concluded that there were sufficient contacts with Maryland to satisfy the transacting business standard of that latter section.[5] However, this Court also at the same time raised the question of whether the requirements of section (a), which is inapplicable to cases brought under section (b)(4), *see, e.g., Greenwood v. Tides, Inn, Inc.,* 504 F.Supp. 992, 996 & n. 11 (D.Md.1980) (Kaufman, J.); *Sibert v. Flint,* 564 F.Supp. 1524, 1528 (D.Md.1983) (Miller, Jr.); *Malinow v. Eberly,* 322 F.Supp. 594, 599 (D.Md. 1971) (Miller, J.); but which is applicable to cases brought under (b)(1), were met. Section (a) requires an inquiry into the nexus between the contacts which form the basis of jurisdiction and the claim advanced against the out-of-state defendant in the particular case at bar. The limitation imposed by section (a) is intertwined with the requirements of the Due Process Clause. Section (a) reads as follows:

> If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

In *Malinow,* Judge Miller concluded that the words "arising from", as interpreted by the Maryland courts, calls for "a showing of some purposeful acts performed by the defendant in Maryland in relation to one or more of the elements of the cause of action." 322 F.Supp. at 599.

■ In the instant case, the claim made by plaintiff arises out of injuries allegedly sustained by plaintiff in an April 14, 1984 bus accident in Virginia while plaintiff was a passenger on a bus operated by L & L. The bus involved in that accident was purchased by L & L from Quick Bus Sales on April 9, 1984. Quick Bus Sales and Robert and Earl Quick are named by plaintiff as defendants in some but not all counts of this case. Plaintiff contends in the second count that Quick Bus Sales along with Robert and Earl Quick negligently inspected and tested the bus before its resale to L & L, failed to warn L & L of the bus' unsafe condition and negligently instructed L & L as to the proper use of the bus. The fourth count asserts a cause of action based on strict liability while the sixth count alleges breach of implied warranty against each and all of the Quick defendants. One element of the claims in each of those three counts is the sale of the bus to L & L.[6] Thus, that sale, as such an element, supports the assertion of jurisdiction under (b)(1).[7] So does the interstate tele-

---

**4.** Section (b)(1) states:

> (b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;....

**5.** In support of that conclusion, the Court relies on the facts set out *supra* in this opinion.

**6.** Such sale may, in some circumstances, create a duty to third persons upon which a cause of action for negligence may be rested. *See* W.L. Prosser, Law of Torts §§ 30, 53 (West 1971). The sale of the bus is also relevant to the causes of action based upon breach of implied warranty and strict liability. *See* E. Digges, Jr., *Product Liability in Maryland Revisited,* 7 U.Balt.L.Rev. 1, 14 (1977).

**7.** A defendant need not enter the state to transact business in Maryland under section (b)(1). *See Snyder v. Hampton Industries,* 521 F.Supp. 130, 137–41 (D.Md.1981) (Miller, J.).

phone conversation between L & L in Maryland and Robert Quick in Virginia on April 8, 1981 in which L & L inquired about the availability of a bus and agreed to purchase the bus, since that alleged occurrence indicates that "significant elements of the plaintiff['s] claim arise out of [his] contacts with Maryland." *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 146 (D.Md.1981). Further, those same factual bases satisfy the needs of section (a) which "prevents the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction," *Malinow*, 322 F.Supp. at 599. Accordingly, long-arm jurisdiction under section (b)(1), as well as under (b)(4), exists as to each of the Quick defendants.

## VENUE AS TO THE QUICK PARTNERSHIP

Quick Bus Sales, and Earl and Robert Quick, also challenge venue. As this is a diversity case, venue is available in the district in which either all the plaintiffs or all the defendants reside or in which the claim arose. The applicable law, 28 U.S.C. § 1391(a), provides as follows:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

As to Quick Bus Sales, the partnership, this Court tentatively indicated during the hearing on December 19, 1983 that venue was available under § 1391(a), under the reasoning of *Denver R.G.W.R. Co. v. Railroad Trainmen*, 387 U.S. 556, 561–62, 87 S.Ct. 1746, 1749–50, 18 L.Ed.2d 954 (1967), and *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1220–24 (5th Cir.1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d (1970).

In *Denver*, Justice White concluded that the term "resides" in § 1391(b) called for that subsection to be applied to a union (an unincorporated association) so as to treat that type of entity in the same manner as a corporation is treated purposes under § 1391(c).[8] In *Penrod*, Chief Judge Brown similarly applied the venue provisions of the Jones Act, 46 U.S.C. § 688, to a partnership. Whether, in the light of *Denver* and *Penrod*, the term "resides" in § 1391(a) should be interpreted with the same flexibility to the particular partnership in this case poses a question which is not free of doubt.

In 1 Federal Procedure, Lawyers Edition § 1:682 (1981), the following observations are set forth:

A partnership may sue or be sued where the partners reside.[35] However, there has been disagreement whether a partnership can be treated as having a separate residence for venue purposes and can be sued at the place where it has its principal place of business or wherever it is doing business.[36] Sometimes the determination depends on whether the partnership has the capacity to sue and be sued, either under the laws of the state of organization, as is given some limited partnerships,[37] or under FRCP 17, which gives a partnership capacity to sue or be sued in a federal question case.[38] Under the traditional view, if the partnership was not a jural entity, an action could only be brought where all the partners resided,[39] unless a partner was not an indispensable party.[40] The question remains whether the traditional view has been affected by the decision in *Denver & R.G.W.R. Co. v. Brotherhood of Railroad Trainmen*,[41] which permits an action to be brought where an unincorporated association is doing business.[42] Since there should be no recognizable difference between a partnership and an unincorporated association, a

---

**8.** 28 U.S.C. § 1391(b) and (c) provides:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

partnership which does extensive business on a multistate, international basis should be amenable to suit wherever it is doing business, even though its owner partners do not live there.[43] But despite this view that venue possibilities in actions against partnerships should be expanded to eliminate meaningless distinctions and to serve the needs of litigants and witnesses,[44] courts are still applying the traditional rules for laying venue in actions against partnerships.[45]

[35] *Champion Spark Plug Co. v. Karchmar* (1960, D.C.N.Y.) 180 F.Supp. 727; *Sutherland v. United States* (1934, C.A. 8 Neb.) 74 F.2d 89; *Harris Mfg. Co. v. Williams* (1957, D.C.Ark.) 157 F.Supp. 779.

[36] See the discussion of the various authorities in *Joscar Co. v. Consolidated Sun Ray, Inc.* (1963, E.D.N.Y.) 212 F.Supp. 634.

[37] *[Joscar]*.

[38] *[Penrod]; Goldberg v. Wharf Constructuers* (1962, N.D.Ala.) 209 F.Supp. 499.

As to capacity to sue see Federal Procedure, L.Ed. Parties §§ 59:60 et seq.

[39] *Koons v. Kaiser* (1950, D.C.N.Y.) 91 F.Supp. 511.

[40] *James Talcott, Inc. v. Burke* (1956, D.C. Ohio) 145 F.Supp. 389.

[41] (1967) 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954.

[42] § 1:681, supra.

[43] *[Penrod]*.

[44] *[Penrod]*.

[45] See *Thee v. Marvin Glass & Associates* (1976, E.D.N.Y.) 412 F.Supp. 1116, in which the court, relying on *Koons v. Kaiser* (1950, D.C. N.Y.) 91 F.Supp. 511, held that a partnership is not a separate jural entity under state law, that its residence is that of the individual partners, and that 28 U.S.C.S. § 1391(c) is inapplicable, since it is only applicable to corporations, not partnerships.

In the *Thee* case, (cited in footnote 45 of the above quoted treatise passage), in which the Court refused to treat a partnership as if it were a corporation, neither *Denver* nor *Penrod* is mentioned. In *FSI Group v. First Federal Savings,* 502 F.Supp. 356, 357 (S.D.N.Y.1980), the Court reached the opposite conclusion, relying on, *inter alia, Denver* and *Penrod.*[9]

**9.** In *Flowers Industries v. Bakery & Confectionary Union,* 565 F.Supp. 286, 290 n. 2 (N.D.Ga. 1983), the Court followed the *Denver* and *Penrod* cases and wrote:

An unincorporated association such as the defendant in this case is a "corporation" for purposes of this statute and resides for venue

In a number of cases the "doing business" test for venue purposes has been treated as harder to meet than the "doing business" test for long-arm jurisdictional purposes. See *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 573 F.Supp. 1106, 1113–14 (D.Mass.1983); *Flowers Industries v. Bakery & Conf. Union,* 565 F.Supp. 286, 290–91 (N.D.Ga.1983). If the test for venue is the same as or less strict than that appropriate with respect to long-arm jurisdiction, then venue is available in this case in Maryland against Quick Bus Sales for the reasons discussed *supra,* with regard to personal jurisdiction. On the other hand, if the test for venue is stricter than for long-arm jurisdiction purposes, the requisites of that different test, as propounded in *Wool Masters* and *Flowers Industries,* may still perhaps be satisfied herein as to Quick Bus Sales.

In *Wool Masters,* Judge Garrity noted that "jurisdiction is relatively more concerned with fairness and venue more concerned with inconvenience." 573 F.Supp. at 1114, *quoting from Time, Inc. v. Manning,* 366 F.2d 690, 696 (5th Cir.1966). "This issue," Judge Garrity continued, "does not lend itself to an analysis using neat labels and catch-phrases. It requires a fact-sensitive inquiry into the general character of the corporation, the nature and scope of its business operations, and the extent and continuity of authorized corporate conduct within the forum." *Id.* Under those standards, the mail solicitation addressed by defendant Wool Masters, a New York-based corporation, to Massachusetts retailers, and the resulting sales to certain Massachusetts customers which amounted to approximately $8,800 or 6% of Wool Masters' total sales were held by Judge Garrity to be insufficient without more to support venue under section 1391(c). *Id.* at 1109, 1113–15.

purposes in whatever judicial district it is doing business. *Denver & Rio Grande Western R.R. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, [87 S.Ct. 1746, 18 L.Ed.2d 954] (1967); *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir.1980).

In *Flowers Industries,* the Court suggested the following factors for consideration in a section 1391(c) analysis:

There is no exact formula for determining whether a defendant is doing business within the forum district so as to determine this issue of venue. However, consideration must be given to the following factors: (1) the character and nature of the business, (2) the continuity of the business operations in the district[4] (is it of a systematic nature so as to constitute a pattern of business activity, or is it merely composed of a single transaction or a single visit with the state), (3) the number of contacts with the district (*e.g.,* the court will examine such contacts as meetings, telephone calls, mailings, solicitations, and negotiations; however, all of these types of contacts require a quantum of activity greater than a single telephone call or a single meeting), (4) the physical presence of the defendant in the forum (does the defendant maintain an office or other facility in the district, maintain a bank account, telephone listing, post office box, or own any property or other assets in the district), and (5) the method of doing business (is it by way of direct representative, agent, subsidiary, franchise, or other affiliate, or is the defendant a common carrier).

[4] In examining the pattern and amount of business activity in the district, this court would require more than a "minimum contact" with the forum, but the activity does not have to be so substantial as that required by the district court in *Remington-Rand v. Knapp-Monarch, Inc.,* 139 F.Supp. 613 (E.D.Pa.1956), which required that corporate activity of such a nature so as to localize the business in the area and be such that a license would be required.

565 F.Supp. at 291.

In the instant case, Quick Bus Sales made six sales to Maryland customers between 1977 and 1983, representing in each of those years from .7% to 11% of its annual revenues. Those figures are both above and below certain of the figures in both *Wool Masters* and *Flowers Industries.* The use of the telephone for negotiations with Maryland customers is also a factor although hardly of sufficient magnitude to be dispositive in and of itself. Nor can the lack of an office, representative, agent or bank account be said to be of deciding importance. More persuasive are the trips by one or more persons on behalf of Quick Bus Sales into Maryland, either to visit customers or to travel on Maryland roads en route to other states. The latter indicates that such trips are not overly burdensome upon Quick Bus Sales. Accordingly, under the "fact-sensitive" inquiry suggested by Judge Garrity in *Wool Masters,* the "nature and scope" of Quick Bus Sales' activities in Maryland may be sufficient to satisfy the requirements of section 1391(c) as to the partnership defendant. However, for reasons which are discussed *infra,* that question need not be resolved herein.

### VENUE AS TO ROBERT AND EARL QUICK

Neither of the first two bases for venue stated in § 1391(a) exists as to the two individual defendants, Robert and Earl Quick, since plaintiff's residence is in Texas and the residences of Robert and Earl Quick are in Virginia. Accordingly, venue lies in Maryland under § 1391(a) against Robert and Earl Quick only if plaintiff's claim arose in Maryland.

In *Hodson v. A.H. Robins,* 528 F.Supp. 809, 813 (E.D.Va.1981), *aff'd,* 715 F.2d 142 (4th Cir.1983), Judge Merhige referred to three standards for determining where a claim arises within the meaning of section 1391(a):

(1) the place of injury rule;

(2) the weight of the contacts rule; and

(3) the rule which turns on whether a substantial part of the events or omissions giving rise to the claim occurred in the district.

Under the place of the injury rule, venue in the instant case lies in Virginia where the accident occurred. The second approach "requires a comparison of the defendants' contacts in the various districts involved in the case and a finding that the claim arose in the district where the contacts have been 'most significant.'" *Id.* Under that approach, the contacts of Robert and Earl

**1278**

Quick with Maryland, while sufficient for personal jurisdiction, are substantially less than their contacts with Virginia. The third approach may support Maryland venue herein on the strength of plaintiff's boarding the bus and purchasing his ticket in Maryland. Such a finding, however, does not appear to meet the standards set forth in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), for choosing among different districts in which a claim could be said to have arisen. In that case, Justice Stevens noted:

> [I]n the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

443 U.S. at 185, 99 S.Ct. at 2717 (emphasis in original; footnote omitted). In this case, even assuming that the first two factors, which concern witnesses and other evidence, could support Maryland as an alternate forum, the third factor, the convenience of the defendant, favors Virginia. Accordingly, venue in this case would not seem to lie against the individual defendants, Robert and Earl Quick, in Maryland under section 1391(a). Under the particular circumstances of this case, however, dismissal of the claims against those two defendants as well as to defendant Quick Bus Sales is nevertheless not appropriate for the reasons discussed *infra*.

## REALIGNMENT OF PARTIES

■ Robert and Earl Quick and also Quick Bus Sales, in addition to being de-

fendants in the main action, are also defendants in cross-claims asserted by defendants L & L and General Tire and Rubber Company. Those cross-claims, while so denominated because they are asserted against co-defendants, are substantively similar to third-party claims because liability in connection with them is contingent upon a finding against the cross-claimants in the main action. Under such circumstances, and in view of the existence of personal jurisdiction over the Quick defendants as discussed *supra*, it is appropriate for this Court to view and to treat the cross-claims as the equivalent of third-party claims, which do not require the satisfaction of any venue requirements, *see* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1445 at 240–42 (West 1971), and to allow the plaintiff to claim against the cross-claim defendants without having to satisfy any venue requirement. *See id.* at 243–44.[10] That procedure obviates the need for a pointless reshuffling and rearrangement of the parties—a reschuffling and a rearrangement which would involve the dismissal of plaintiff's claim against defendants Quick Bus Sales and Earl and Robert Quick for lack of venue (if there is such lack), the dismissal of the cross-claims against them because they are no longer defendants, the reassertion of the cross-claims as third-party claims and the reassertion of plaintiff's claim against Quick Bus Sales and Earl and Robert Quick as defendants after they had been brought back into the suit as third-party defendants. The philosophy of the Federal Rules of Civil Procedure as stated in Rule 1 which provides that the rules "shall be construed to secure the just, speedy and inexpensive determination of every action" supports such a result.[11] *Cf. Picou v.*

10. While in the past there have been decisions to the contrary, this Court is persuaded by those decisions which have applied the view expressed by Professors Wright and Miller.

11. Professors Wright and Miller write in their treatise of the sentence quoted in the text from Fed.R.Civ.P. 1:

> There probably is no provision in the federal rules that is more important than this man-

date. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted. The primary purpose of procedural rules is to promote the ends of justice; the federal rules reflect the view that this goal can best be accomplished by the establishment of a single form of action, known as a "civil action," … that minimizes technicali-

*Rimrock Tidelands, Inc.*, 29 F.R.D. 188, 189 (E.D.La.1962) (Ainsworth, J., then a District Judge). That approach also obviates the necessity for this Court to determine whether venue exists as to the Quick partnership or to dismiss the within case against the two Quick individual defendants or the Quick partnership for lack of venue.

### CONCLUSION

For the reasons stated during the December 19, 1983 hearing and in this opinion, the motion to dismiss filed by defendants Quick Bus Sales, Robert Quick and Earl Quick will be denied.

ties and places considerable discretion in the trial judge for construing the rules in a manner that will secure their objectives.

4 C. Wright & A. Miller, Federal Practice and Procedure § 1029, at 127–28 (West 1969) (footnotes omitted).