740 F.Supp. 724 (1990)
John H. ERNSTER, et al., Plaintiffs,
v.
RALSTON PURINA COMPANY, et al., Defendants.
No. 87-1662C(6).
United States District Court, E.D. Missouri, E.D.
June 28, 1990.
*725 David Helfrey, Gino Battisti, Patricia N. McCloskey, Guilfoil, Petzall and Shoemake, for John H. Ernster.
Paul M. Denk, St. Louis, Mo., for plaintiffs.
Randall G. Litton, Richard C. Cooper, Price, Heneveld, Cooper, DeWitt & Litton, Grand Rapids, Mich., Alan S. Boston, Lewis & Rice, St. Louis, Mo., for Ralston Purina Co. and Van Camp Seafood Co., Inc.
Thomas C. Walsh, Bruce C. Oetter, Bryan, Cave McPheeters & McRoberts, St. Louis, Mo., for Deltown Chemurgic Corp.

MEMORANDUM
GUNN, District Judge.
This matter is currently before the Court on the following motions:
1. motion to dismiss Count I filed by defendants Ralston Purina Company ("Ralston") and Van Camp Seafood Company, Inc. ("Van Camp");
2. motions to dismiss Counts I, III, VI and VIII filed by defendant Deltown Chemurgic Corporation ("Deltown"); and
3. motion for partial summary judgment on Count VIII filed by Deltown.
For the following reasons, the Court denies each of the above mentioned motions[1].
Plaintiffs John H. Ernster ("Ernster"), an individual who is a citizen and resident of California, and Excelpro, Inc. ("Excelpro"), a California corporation with its principal place of business in California, bring this nine-count complaint against Ralston and Van Camp[2], both Delaware corporations with their principal places of business in St. Louis, Missouri; and Deltown, a New York corporation with its principal place of *726 business in either Greenwich, Connecticut or Fraser, New York.
Ernster is the inventor of the processes and compositions described and claimed in the following United States Patents: No. 4,363,820 entitled "Process for Preparing Canned Tuna Fish;" No. 4,545,933 entitled "Hydrolyzed Protein Composition and Process Used in Preparation Thereof;" and No. 4,600,588 entitled "Milk Protein Hydrolysate and Process of Preparation." Each of the foregoing patents was duly and legally issued to Ernster and are attached to plaintiffs' complaint and marked exhibits "A" through "C" respectively.
Excelpro is the exclusive licensee of the '933 and '820 patents and is a licensee of the '588 patent. The process employed by Excelpro in the manufacture of hydrolyzed protein composition as well as the compositions themselves are covered in the claims of the '933 and '588 patents.
Plaintiffs allege that in approximately November 1983, Ralston and Van Camp entered into an agreement, negotiated in St. Louis, Missouri and elsewhere, with Ernster and Excelpro whereby Excelpro would provide the requirements of Ralston and Van Camp for the hydrolyzed protein conceived by Ernster and developed by Ernster and Excelpro for use by Ralston and Van Camp in preparing canned tunafish in their tuna canneries in Puerto Rico, San Diego and American Samoa. In connection with this agreement, and at Ralston and Van Camp's direction, Ernster and Excelpro representatives went to these canneries and assisted Van Camp and Ralston in setting up tuna processing plants for preparing canned tunafish in accordance with the processes claimed in the '820 patent.
Ernster and Excelpro also supplied to Ralston and Van Camp hydrolyzed protein covered by claims of the '933 patent. Excelpro continued to be the exclusive supplier of hydrolyzed protein in the form claimed in the '933 patent to Purina and Van Camp until approximately March 1987. Throughout the years following 1984, Ralston and Van Camp have employed the processes for preparing canned tunafish claimed in the '820 patent in their tuna canning operations in Puerto Rico and Samoa. The San Diego facility was phased out of tuna canning in 1984.
At some time prior to March 1987, plaintiffs allege that Ralston and Van Camp entered into contract negotiations with Deltown, in St. Louis, Missouri and elsewhere, whereby Deltown would undertake to manufacture products which plaintiffs allege are covered by the claims of the '933 and/or the '588 patents and supply such products to Ralston and Van Camp for use in preparing canned tunafish in accordance with the processes covered by the claims of the '820 patent. Further, plaintiffs allege that in March 1987 Ralston and Van Camp unilaterally terminated their agreement with Ernster and Excelpro to acquire from Excelpro their requirements for hydrolyzed protein at their Puerto Rico cannery and started to acquire such protein from Deltown. Plaintiffs allege, finally, that Deltown, Ralston and Van Camp conspired to infringe and have been and are now willfully and deliberately infringing the '933, the '588 and the '820 patents. Plaintiffs assert that they notified defendants of these allegations and demanded that defendants cease their infringement, but that defendants refused to do so.
In Count I, plaintiffs allege that the defendants conspired to infringe plaintiffs' patents. In Count II, plaintiffs allege direct patent infringement by Ralston and Van Camp in the form of inducing Deltown to produce products covered by valid patents without authorization; purchasing products from Deltown covered by valid patents without authorization; using products produced by Deltown which infringe on valid patents; and using patented processes without authorization. In Count III, plaintiffs allege direct patent infringement by Deltown with respect to its inducing Ralston and Van Camp to use, buy and sell products which infringe on plaintiffs' patent rights; by selling products covered by valid patents; by producing such products; and by inducing Ralston and Van Camp to use processes covered by valid patents.
*727 Count IV is for breach of contract against Ralston and Van Camp. Plaintiffs allege that in November 1983, at defendants' request, plaintiffs offered to provide Ralston and Van Camp with valuable and confidential know-how, trade secrets and technical information with respect to the process for making and utilizing hydrolyzed casein in the canning of tunafish. In return, defendants allegedly promised to purchase their requirements for hydrolyzed casein exclusively from Excelpro and keep the information obtained from plaintiffs confidential.
Plaintiffs did in fact provide the know-how, trade secrets and technical information to Ralston and Van Camp and defendants used the information in setting up their tuna canning operations in San Diego, Puerto Rico and Samoa. However, in March 1987, without warning or explanation, defendants Ralston and Van Camp terminated Excelpro as their exclusive supplier of hydrolyzed casein for defendants' tuna canning plant in Puerto Rico and commenced utilizing defendant Deltown for that purpose. In approximately January 1988, defendants Ralston and Van Camp further terminated Excelpro as the exclusive supplier of hydrolyzed casein for their tuna processing plant in American Samoa and began utilizing defendant Deltown for that purpose. Moreover, plaintiffs allege that Ralston and Van Camp are continuing to utilize and have transferred to third parties the know-how, trade secrets and confidential information provided to them by plaintiffs, in violation of the agreement between Ralston, Van Camp and plaintiffs. Finally, plaintiffs allege that they have fully performed their obligations under the agreement and stand ready to continue delivery of the requirements of Ralston and Van Camp for hydrolyzed casein in accordance with the agreement.
Count V of plaintiffs' complaint alleges misappropriation of confidential, proprietary information and trade secrets by Ralston and Van Camp. Count VI alleges misappropriation of confidential proprietary information and trade secrets by Deltown. Plaintiffs allege that Deltown has been and is continuing knowingly to utilize the know-how, trade secrets and technical information of plaintiffs in producing a hydrolyzed casein substance for use in the process of canning tuna.
Count VII alleges constructive fraud against Ralston and Van Camp. In this count, plaintiffs allege that the facts and circumstances attendant to their discussions and negotiations with Ralston and Van Camp which preceded the agreement between these parties established a confidential relationship between them. As a result, Ralston and Van Camp "owed plaintiffs a fiduciary duty of utmost honesty, good faith and fair dealing." Plaintiffs' Complaint, p. 22, ¶ 76; Plaintiffs' Amended Complaint, p. 23, ¶ 80. Plaintiffs allege, finally, that Ralston and Van Camp's actions, as described hereinabove, violated their fiduciary obligations and were taken with the intent and effect of taking unfair advantage of plaintiffs and unjustly enriching themselves at plaintiffs' expense.
In Count VIII, plaintiffs allege wrongful interference with contractual arrangements and business expectancies by Deltown with regard to Deltown's development of a product which it sold to Ralston and Van Camp as a replacement or substitute for the product manufactured and sold by plaintiffs.
In their motion to dismiss Count I of the complaint, Ralston and Van Camp argue that no cause of action exists for conspiracy to infringe a patent. In support of their argument, defendants rely on one Eastern District of New York case in which the Court granted a motion to dismiss on the same basis. Celotex Corp. v. V.E. Power Door Corp., 204 U.S.P.Q. 636 (E.D. N.Y.1979). Further, defendants argue that, because patent rights are purely statutory, no common law action may be utilized to broaden these rights.
In opposition, plaintiffs argue that other district courts have recognized, albeit implicitly, a cause of action for conspiracy to infringe a patent. See, Shure Brothers, Inc. v. Korvettes, Inc., 198 U.S.P.Q. 283 (N.D.Ill.1978); Greenberg v. Croydon Plastics Company, Inc., 182 U.S.P.Q. 673, 378 F.Supp. 806 (E.D.Pa.1974). Plaintiffs *728 further note that many courts recognize causes of action for conspiracy to infringe copyrights and trademarks, also statutorily created property rights.
The Court finds plaintiffs' argument persuasive. Neither party has supported its argument either with Supreme Court or Eighth Circuit law. Moreover, the cases defendants cite in support of their argument that patent law is to be construed more restrictively than copyright and trademark law do not specifically so hold. Accordingly, the Court denies the motion to dismiss Count I of plaintiffs' complaint filed by Ralston and Van Camp.
Deltown's motion to dismiss Count I is founded on the same arguments and reasoning as was that of defendants Ralston and Van Camp. The Court denies this motion in accordance with its denial of the motion filed by Ralston and Van Camp.
Deltown's motion to dismiss Count III is based on its allegations that venue in the Eastern District of Missouri is improper. In support of its argument, Deltown relies upon Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), for the proposition that 28 U.S.C. § 1400(b) is the exclusive venue provision for patent actions and that, for the purposes thereof, "resides" refers only to the state in which a corporation is incorporated. The Court's own research reveals, as an initial matter, that Fourco may have been superseded by the 1988 amendment to 28 U.S.C. § 1391(c). See, e.g., Regents of University of California v. Eli Lilly & Co., 734 F.Supp. 911 (N.D.Cal. 1990); Century Wrecker Corp. v. Vulcan Equipment Co., 733 F.Supp. 1170, 1172 (E.D.Tenn.1989). However, the Editorial Notes following the amended § 1391 provide: "Section 1013(b) of Pub.L. 100-702 provided that: "The amendment made by this section [amending subsec. (c) of this section] takes effect 90 days after the date of enactment of this title [Nov. 19, 1988].'" Accordingly, it appears that the revision does not apply herein.
Nevertheless, venue is a matter left to the discretion of the trial court. See, e.g., Fibra-Steel, Inc. v. Astoria Industries, Inc., 708 F.Supp. 255 (E.D.Mo.1989). Having considered the interests of justice, economy and the parties, the Court finds that dismissal of this one count against Deltown, while maintaining other counts which include this defendant, is counterindicated. Accordingly, the Court denies Deltown's motion to dismiss Count III.
Deltown's motion to dismiss Counts VI and VIII is based upon its allegation that under 28 U.S.C. § 1391 venue in this district is improper. Deltown relies almost exclusively upon Maybelline Co. v. Noxell Corporation, 813 F.2d 901 (8th Cir.1987) for its argument that it has not been "doing business" in this district for venue purposes. However, the Court finds that Maybelline does not support Deltown's position. By Deltown's own admission, its representatives visited and made telephone calls to St. Louis during preliminary negotiations with Van Camp. The Court finds that, because of the nature of this case, those preliminary negotiations could have great import with respect to Deltown's intention to divert Van Camp's business from Excelpro to itself. These negotiations, in fact, may comprise the alleged "inducement" to infringe Ernster's patents. Such activities cannot be said to be "minuscule" with respect to contacts which may prove to be uniquely material to the factual circumstances of this case.
The Court further reiterates its reasoning in the discussion of the motion to dismiss Count III. Such reasoning is equally applicable to this motion. Having considered all of the above, the Court denies Deltown's motion to dismiss Counts VI and VIII.
Deltown's motion to dismiss Counts II, IV, IV (sic), VII and IX and the entire complaint against it would seem to be based upon the Court's hypothetically having granted Deltown's other motions. The Court having declined to do so, it denies this motion.
Finally, Deltown's motion for partial summary judgment to dismiss Count VIII arises almost entirely out of Deltown's allegation that plaintiffs' contract *729 with Ralston and Van Camp is unenforceable. In addition, Deltown alleges that even assuming plaintiffs had an enforceable contract, Deltown had no knowledge of the contract. Finally, Deltown argues that if it did interfere with an enforceable contract, it did so for its own bona fide economic interest.
Plaintiff concedes that its agreement with Ralston and Van Camp was oral. This, of course, does not in and of itself render the contract unenforceable. The fact that the agreement was oral does, however, make the issue of its validity more complex than it would be if the parties had a written document upon which to rely. The issue of the contract's enforceability is a uniquely factual one, however, as are the issues of Deltown's knowledge of the contract and its motivation in interfering, if it did, with plaintiffs' business expectancies. The Court finds, therefore, that these issues will require the resolution of conflicting portrayals of the material facts and are, as a result, singularly ill-suited for disposition on summary judgment. Accordingly, Deltown's motion for partial summary judgment is denied.

ORDER
In accordance with the Court's memorandum filed herein this date,
IT IS HEREBY ORDERED that the motion to dismiss Count I of plaintiff's complaint filed by Ralston Purina Company and Van Camp Seafood Company, Inc. be and it is denied.
IT IS FURTHER ORDERED that the motion to dismiss Count I filed by Deltown Chemurgic Corporation be and it is denied.
IT IS FURTHER ORDERED that the motion to dismiss Count III filed by Deltown Chemurgic Corporation be and it is denied.
IT IS FURTHER ORDERED that the motion to dismiss Counts VI and VIII filed by Deltown Chemurgic Corporation be and it is denied.
IT IS FURTHER ORDERED that the motion to dismiss Counts II, IV, IV (sic), VII and IX and the entire complaint against it filed by Deltown Chemurgic Corporation be and it is denied.
IT IS FURTHER ORDERED that the motion for partial summary judgment to dismiss Count VIII filed by Deltown Chemurgic Corporation be and it is denied.
NOTES
[1] The Court notes that other discovery motions are currently pending before Magistrate Jackson, as well as a motion by plaintiffs to file their first amended complaint. The Court finds that its ruling on these dispositive motions should assist in discovery matters. The Court also finds that the proposed amended complaint does not substantively alter plaintiffs' complaint, but merely provides more specificity with regard to the time at which defendants are said to have terminated their relationship with plaintiffs. Accordingly, Magistrate Jackson's decision with regard to leave to file that complaint will not affect this Court's consideration of the motions to dismiss and for partial summary judgment.
[2] At all times material to this case, Van Camp was a division of Ralston Purina. Van Camp is now a wholly owned subsidiary of Ralston.