INJECTION RESEARCH SPECIALISTS, Plaintiff,

v.

POLARIS INDUSTRIES, L.P., Defendant.

No. 90–C–1143.

United States District Court, D. Colorado.

March 29, 1991.

Gordon Netzorg, Denver, Colo., and Elliot S. Kaplan, Minneapolis, Minn., for defendant.

Frederic Conover, Denver, Colo., for plaintiff.

## AMENDED MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

On June 28, 1990, the plaintiff Injection Research Specialists, Inc. (IRS), a Colorado corporation, commenced this patent infringement action against Polaris Industries, L.P. (Polaris), a Delaware limited partnership with its principal place of business in Minnesota. Eight days later, on July 6, 1990, Polaris filed suit in the United States District Court for the District of Minnesota seeking a judgment declaring IRS' patent invalid. Currently pending is the defendant's motion to dismiss for improper venue or to transfer the case to Minnesota. Plaintiff has responded by opposing the motion. The parties have fully briefed the issues and oral argument would not materially facilitate the decision process. Jurisdiction exists pursuant to 28 U.S.C. §§ 1332(a) and 1338.

The lawsuit involves an electronic fuel injection system developed and patented by IRS for two-stroke engines. IRS alleges that Polaris, a snowmobile manufacturer, has infringed its patent by offering for sale a snowmobile containing parts that utilize its patented technology. Polaris has moved, pursuant to Fed.R.Civ.P. 12(b)(3), to dismiss the instant action for improper venue, asserting that 28 U.S.C. § 1400(b) is the exclusive statute controlling venue in patent infringement actions and that its requirements cannot be met here. IRS argues that § 1400(b) must be read in conjunction with 28 U.S.C. § 1391(c), and, al-

ternatively, that venue is proper under § 1400(b) alone. Polaris also has moved to transfer the action to Minnesota.

### I. Venue.

Section 1400(b), which applies to suits arising under U.S. patent and copyright laws, provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (1990).

Under this statutory standard venue is proper here if either: (1) Polaris resides in Colorado; or (2) Polaris has *both* committed acts of infringement in Colorado *and* maintains a regular and established place of business here. *See Cordis Corp. v. Cardiac Pacemakers,* 599 F.2d 1085, 1086 (1st Cir.1979).

Until recently, courts unanimously held that § 1400(b) is the sole provision controlling venue in patent infringement actions and that it is not supplemented by § 1391(c). *See Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); *In re Cordis Corp.,* 769 F.2d 733, 735 (Fed. Cir.1985); *Dual Manufacturing and Engineering, Inc. v. Burris Industries, Inc.,* 531 F.2d 1382 (7th Cir.1976). However, in 1988, subsequent to those decisions, § 1391(c) was amended.[1] It now provides, in pertinent part:

"For purposes of venue *under this chapter,* a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action was commenced." (emphasis added).

Although both § 1391(c) and § 1400(b) are found in Chapter 87 of Title 28, federal

---

1. *See* Pub.L. 100–702, § 1013, 102 Stat. 4642, 4669 (1988). Prior to its amendment, § 1391(c) provided:

"A corporation may be sued in any judicial district in which it is incorporated or licensed

to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c) (1987).

district courts have disagreed on the question whether § 1391(c), as amended, affects the determination of a corporate defendant's residence under § 1400(b).[2]

The Federal Circuit in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed.Cir.1990), recently held:

> "the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced."

The *VE Holding* court recognized that by reading § 1391(c) into § 1400(b), the latter section's second venue test—turning on where the defendant commits acts of infringement *and* has a regular and established business—becomes superfluous, because wherever that test is satisfied the corporate defendant will be subject to personal jurisdiction. *Id.* at 1580 n. 17. The court justified its reading of the statutes, however, by noting *obiter dictum* that:

> "[s]ection 1400(b) applies to *all* defendants, not just corporate defendants, and thus the second test for venue remains operative with respect to defendants that are not corporations." *Id.* (emphasis in the original).

The *VE Holding* court thus appears to have concluded that a partnership's residence is not determined under § 1391(c).[3]

However, no authority was cited to support that proposition.

While *VE Holding* provides substantial guidance, it is not dispositive of the issue here. The question facing that court was whether venue determination for a *corporate* defendant is affected by the amendment to § 1391(c), not whether, as here, the rules for determining venue for a partnership defendant have changed. Accordingly, I must determine: (1) whether partnership residence is, in fact, determined under the corporate residence criteria of § 1391(c); and (2) if so, whether in a patent infringement suit the residence of a defendant partnership should be determined, like that of a corporation, by applying the current version of § 1391(c).[4]

### A. Partnership Residence and Section 1391(c).

It is familiar law that a partnership may sue or be sued wherever one or more partners reside. *Champion Spark Plug Co. v. Karchmar*, 180 F.Supp. 727 (S.D.N.Y.1960). While there has been disagreement, the judicial trend in venue determinations is to treat partnerships like corporations, *i.e.*, as separate jural entities subject to suit wherever they do business. *See Carcella v. L & L Coach Lines, Inc.*, 591 F.Supp. 1272, 1275–76 (D.Md.1984); *Joscar Co. v. Consolidated Sun Ray, Inc.*, 212 F.Supp. 634 (E.D.N.Y.1963); 1 Federal Practice, Lawyers Edition § 1:682 (1981).

---

**2.** *Compare Joslyn Mfg. Co. v. Amerace Corp.*, 729 F.Supp. 1219 (N.D.Ill.1990) and *Doelcher Products, Inc. v. Hydrofoil Int'l, Inc.*, 735 F.Supp. 666 (D.Md.1989) (§ 1391(c) does not effect § 1400(b)), *with Regents of University of California v. Eli Lilly & Co.*, 734 F.Supp. 911 (N.D.Cal.1990), *Century Wrecker Corp. v. Vulcan Equip. Co.*, 733 F.Supp. 1170 (E.D.Tenn.1989), and *Biosyntec, Inc. v. Baxter Healthcare Corp.*, 746 F.Supp. 5 (D.Or.1990) (§ 1391(c) effects § 1400(b)).

In *Ernester v. Ralston Purina Co.*, 740 F.Supp. 724 (E.D.Mo.1990), the court mentioned but did not decide the issue. The *Century Wrecker* decision is currently on appeal. *See* 902 F.2d 43 (Fed.Cir.1990).

**3.** Other courts have likewise concluded. *See Illinois Tool Works, Inc. v. Rawplug Co.*, 1990 WL 171601 (N.D.Ill.1990); *Regents of University of California v. Eli Lilly & Co.*, 734 F.Supp. 911 (N.D.Cal.1990). Like the *VE Holding* court,

however, those courts addressed the venue issue only as it relates to corporations.

**4.** These questions are related but separate. The first focuses on previous treatment courts have accorded partnerships in venue determinations. Because no court yet has addressed the application of amended § 1391(c) to partnerships, the inclination or disinclination of courts to treat partnerships like corporations under § 1391(c) can be divined only by referencing pre-amendment decisions.

The second question of first impression presented here is whether partnerships, like corporations, should be subject to suit wherever personal jurisdiction over them may be maintained. In broad terms, the question is whether venue determinations involving defendant partnerships will remain bound by the vestige of past judicial decision or will partake of the contemporary treatment courts accord the related corporate entity in a patent venue context.

The United States Supreme Court first disregarded the distinctions between corporations and unincorporated business associations for venue purposes in *Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967).[5] There the defendant was a labor union. Venue was asserted under § 1391(b), which allows suit wherever the defendant resides. The Court, referring to § 1391(c)'s definition of corporate residence, determined that:

> "[I]t most nearly approximates the intent of Congress to recognize the reality of the multi-state, unincorporated association such as a labor union and to permit suit against that entity, like the analogous corporate entity, wherever it is 'doing business.'" *Id.* at 562, 87 S.Ct. at 1750.

*Brotherhood of R.R. Trainmen* was extended to partnerships in *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir. 1969). In *Penrod* the court found no meaningful difference between partnerships and unincorporated associations to justify their disparate treatment for purposes of venue. *Id.* at 1220. The court thus read the general venue provision of § 1391(c) into the specific Jones Act venue provision there at issue to allow suit against the partnership where it was doing business. *Id.* at 1220–25.

Other district courts, almost unanimously, have followed *Brotherhood of R.R. Trainmen* and *Penrod* in analogizing partnerships and related entities to corpora-

tions, and therefore determining partnership residence under § 1391. *See Reading Metal Craft Co. v. Hopf Drive Assoc.,* 694 F.Supp. 98, 100–101 (E.D.Pa.1988); *Carcella v. L & L Coach Lines, Inc.,* 591 F.Supp. 1272, 1275–77 (D.Md.1984); *Flowers Industries v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,* 565 F.Supp. 286, 288 n. 2 (N.D.Ga.1983); *FSI Group v. First Fed. Sav. and Loan Assoc.,* 502 F.Supp. 356, 357 (S.D.N.Y.1980).[6] Thus it is evident that the propriety of venue in suits involving defendant partnerships must be assessed under corporate venue standards.

### B. Partnership Residence Under Section 1400(b).

■ The above analysis leads to the question dispositive here: Whether § 1391(c), as amended, affects § 1400(b) venue determinations involving partnership defendants. Surprisingly little authority exists on the treatment of non-corporate entities under § 1400(b).[7] It is clear, however, that unincorporated associations are treated like corporations for the purpose of § 1400(b) analysis. *Sperry Products, Inc. v. Association of American Railroads,* 132 F.2d 408 (2d Cir.1942). *Sperry* was decided at a time when a corporation had a single residence for venue purposes, its state of incorporation. *Sperry* determined that an unincorporated association likewise should be considered to have a single residence, its principal place of business.[8] *Id.*

---

5. Courts that have followed that decision include, *e.g., Clark & Reid Co. v. United States,* 804 F.2d 3 (1st Cir.1986) (rate bureau); *Varsic v. United States Dist. Court,* 607 F.2d 245 (9th Cir.1979) (pension fund); *Cable News Network, Inc. v. American Broadcasting Co.,* 528 F.Supp. 365 (N.D.Ga.1981) (union); *Chance v. E.I. Du Pont de Nemours Co.,* 371 F.Supp. 439 (E.D.N.Y. 1974) (trade association).

6. *See also Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 842 (9th Cir.1986); *Pepsico, Inc. v. Board of Trustees of Teamsters Pension Trust Fund,* 1988 WL 64869 (S.D.N.Y. June 13, 1988); *Kipperman v. McCone,* 422 F.Supp. 860, 875–76 (N.D.Cal.1976); *cf. American Airlines Inc. v. Air Line Pilots Ass'n Int'l,* 169 F.Supp. 777, 782 (S.D.N.Y.1958); *Portsmouth Baseball Corp. v. Frick,* 132 F.Supp. 922, 926–27 (S.D.N.Y.1955). *But see Hantover, Inc. v. Omet,*

*S.N.C. of Volentieri & Co.,* 688 F.Supp. 1377, 1388 (W.D.Mo.1988).

7. Research reveals no case that defines a partnership's residence under the statute.

8. The *Sperry* court further held that the defendant association was "present" wherever any substantial part of its activities continuously were conducted. *Sperry, supra.* The court determined that fact was insufficient to establish venue under § 1400(b)'s first test, however, because such a holding would moot the statute's second test. *Id.* By equating residence under § 1400(b) with personal jurisdiction under § 1391(c), the *VE Holding* court has indicated that concern for maintaining the separateness of the former statute's two tests is not determinative of the venue issue, at least with respect to corporate defendants.

Since *Sperry,* the definition of corporate residence has been broadened substantially. Nevertheless that opinion's rationale for treating corporate and non-corporate entities similarly, when considering the propriety of venue, remains instructive. Indeed, it was upon *Sperry* that the United States Supreme Court primarily relied to conclude that unincorporated associations should be treated like corporations. *See Brotherhood of R.R. Trainmen,* 387 U.S. at 560–61, 87 S.Ct. at 1748–49. Further, *Penrod* and its progeny teach that partnerships should be treated like unincorporated associations in venue analyses. A logical synthesis of those cases suggests that an expanded view of partnership residence is a concomitant of the broadening of corporate residence standards.

Other considerations likewise favor that conclusion. To hold that partnerships may not be likened to corporations for § 1400(b) purposes would be to exclude from the mandate of *VE Holding* a myriad of very substantial associations or partnerships doing business on a national or international scale. That conclusion would return the law to the historical, restrictive patent venue provisions controlling before the 1988 amendment to § 1391(c). Moreover it would create an anomalous result: Suits against corporations would be permitted wherever they could be found, while suits against analogous and potentially larger economic entities doing business as partnerships would be proscribed everywhere except at their respective principal places of business.

■ Defendant Polaris resembles a global business corporation in all respects except its choice of legal structure. It is one of only four snowmobile manufacturers in the world. In 1987, it realized net proceeds in excess of $98 million through a public offering of Beneficial Assignment Certificates (BAC's). (*See* Dunn & Bradstreet report attached to IRS's response, Ex. E.) There are 12,000 Polaris BAC holders of record and the BAC's are traded publicly on the American and Pacific Stock Exchanges. *Id.* Polaris' 1989 sales totaled over $240 million and its net profits that year exceeded $26 million. *Id.* Basic notions of equity find repugnant a legal dis-

tinction immunizing from suit in a particular judicial district a Brobdingnagian economic entity doing business as a partnership when its potentially Lilliputian corporate counterpart would be amenable to suit there for engaging in the same proscribed conduct.

Like Polaris, economic actors increasingly choose noncorporate legal forms as avenues for conducting local, statewide, national and even international business. However, the characteristics distinguishing partnerships from corporations—*e.g.,* profit and tax liability allocation, management and control structure, and tort liability limitations, among others—do not support continuing the preferential venue treatment previously accorded partnerships. Those characteristics are unrelated to the partnership business activities that create liabilities for which suits may be brought against them. Those liability-creating activities are the same in form, substance and effect whether the entity engaging in them is incorporated or unincorporated. Giving effect to a rule granting partnerships preferential treatment in venue determinations subjects litigants suing partnerships to unfair and discriminatory burdens, and runs contrary to the judicial trend allowing suits to be brought at the place where the liability was created. *See Penrod,* 414 F.2d at 1222–23.

It can be argued that had Congress intended the 1988 revision of § 1391(c) to apply to partnerships, it would have so indicated. Dealing with a similar argument in *Brotherhood of R.R. Trainmen,* however, the United States Supreme Court noted that:

"[I]f it is assumed that Congress was aware of *Sperry* at all, it is surely reasonable to think that Congress anticipated that the approach of that case, analogizing incorporated and unincorporated entities, would continue to be followed by the courts so that if corporate residence were broadly defined by the Congress, the courts would similarly construe the concept of residence of the unincorporated association." 387 U.S. at 561, 87 S.Ct. at 1749.

Likewise here, if as determined in *VE Holding*, Congress intended § 1391(c) to apply to § 1400(b) corporate defendants, it is not unreasonable to assume that Congress was aware that the concept of partnership residence would be similarly construed.

I conclude that the first test for venue under § 1400(b) with respect to a partnership defendant is whether it was subject to personal jurisdiction in the district of suit at the time the action was commenced.[9] Polaris concedes that this court "has the authority to exercise personal jurisdiction." (*See* Polaris' additional briefing, p. 1, n. 1.) Therefore, Colorado is an appropriate venue for the action.

### II. Case Transfer under 28 U.S.C. § 1406(a).

Polaris has moved to transfer the case to Minnesota pursuant to 28 U.S.C. § 1406(a). Under that statute, a court may dismiss a case when venue is improper, or may transfer it to a district where it could have been filed originally. Because venue is proper in Colorado, and there are no other persuasive reasons for transfer, Polaris' motion to transfer is denied.

Accordingly, IT IS ORDERED that:

(1) the defendant's motion to dismiss for improper venue or to transfer the case is denied; and

(2) the parties are ordered to meet and confer within eleven days of this order in a good faith effort to settle this matter and thereby avoid further costly and time consuming litigation. The parties shall consider alternate dispute resolution. They shall report the results of their negotiations in writing to this court within fifteen days, and shall state whether they are pursuing alternate dispute resolution and whether a settlement conference before a Magistrate Judge would facilitate settlement.

---

**9.** While this holding effectively moots § 1400(b)'s second test with respect to partnerships, that test remains operative as to defendants who are individuals.